922 F.2d 842
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Jeffrey WOODS and Joyce Woods, Plaintiffs-Appellees,
v.
Alfred BEAVERS and Annie Beavers, Defendants-Appellants.
 No. 90-3338.
 United States Court of Appeals, Sixth Circuit.
 Jan. 3, 1991.
 
 Before BOYCE F. MARTIN, Jr. and DAVID A. NELSON, Circuit Judges, and BAILEY BROWN, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiffs-appellees Jeffrey and Joyce Woods are an interracially married couple. He is white, and she is black. They allege that they were denied rental housing by the defendants-appellants, Alfred and Annie Beavers. The Woods won a jury verdict of $11,500 in compensatory damages and $23,500 in punitive damages. The Beavers appealed alleging that several errors were committed by the district court. Because we find no reversible error, we affirm the district court.
 
 
 2
 From the evidence, the jury could have found the following facts to be true. The Woods moved to Toledo, Ohio from Texas in November, 1988. The couple immediately began searching for a rental house in which to live. Mr. Woods responded to a classified ad that Annie and Alfred Beavers had placed. Arrangements were made for Alfred Beavers to show the house to Mr. and Mrs. Woods. After the inspection, the Woods returned to the Beavers' residence to finalize the rental arrangements. This was the first time that Annie Beavers had seen Joyce Woods. Annie Beavers became flustered when confronted with the interracial couple. Annie Beavers, however, accepted their $100 deposit and indicated that the Woods owed a balance of $800 for a security deposit and rent. A moving-in date of December 3, 1988 was established.
 
 
 3
 The Beavers did not show up or provide the key on December 3. Jeffrey Woods then called the Beavers' residence, and Annie Beavers answered. She said "please hold," and left the telephone. She never came back. Jeffrey Woods went to the Beavers' residence. As he approached the front door, the door closed and no one responded when he knocked.
 
 
 4
 The Woods filed suit pursuant to the Fair Housing Act, 42 U.S.C. Sec. 3601 and the Civil Rights Acts of 1866 and 1870, 42 U.S.C. Secs. 1981 and 1982.
 
 I.
 
 5
 At trial, Fire Chief Keith McCullough was called in rebuttal as a character witness by the Woods to place Annie Beavers' character for truthfulness in issue. The Beavers allege that the trial court should have excluded the character evidence of the Fire Chief under Federal Rules of Evidence 403, 602, and 701.
 
 
 6
 Character evidence of this type is generally admissible under Rule 608(a). Rule 608(a) provides:
 
 
 7
 (a) Opinion and reputation evidence of character. The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, ...
 
 
 8
 While the Beavers concede that the Fire Chief's testimony was admissible under Rule 608(a), they contend that the testimony should have been excluded under Rules 403, 602, and 701. Rule 403 provides that "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury,...." The standard of review when admissibility of testimony is challenged under Rule 403 is abuse of discretion. United States v. Beechum, 582 F.2d 898 (5th Cir.1978), cert. denied 440 U.S. 920 (1979). Annie Beavers' veracity was a disputed issue. She denied that she had any intent to discriminate on the basis of race. She claimed that no formal rental agreement had been reached between the parties and that she always required a credit check before entering into a lease.
 
 
 9
 For a Rule 403 violation to occur, the testimony must result in "unfair prejudice." To be unfair, the evidence must suggest a decision on an impermissible basis. United States v. Schrock, 855 F.2d 327, 333 (6th Cir.1989).
 
 
 10
 The Beavers maintain that the Fire Chief's testimony was "unfair" because a jury would naturally speculate about what was the basis for the opinion. The jury, according to the Beavers, not having an answer to this question, would accept the testimony of the Fire Chief and assume the worst about Annie Beavers. The Beavers' objection ignores the fact that the Fire Chief could have been and was cross-examined concerning the basis of his opinion. Any risk of unfair prejudice was mitigated by this opportunity to cross-examine.
 
 
 11
 Rule 602 requires that a witness have "personal knowledge of the matter" before the witness can testify. A district court decision to admit testimony over a Rule 602 objection will be upheld unless an abuse of discretion has occurred. M.B.A.F.B. Fed. Credit Union v. Cumis Ins. Soc'y, 681 F.2d 930 (4th Cir.1982). The Fire Chief testified that he had serviced the Beavers' home three times in two years. The third call involved a house fire at the Beavers' residence. The Fire Chief's job was to investigate the fire and determine the cause. Annie Beavers' version of the facts concerning the fire changed several times. According to the Fire Chief, she stated on different occasions that the fire had started from a candle in her daughter's room, from an electrical short in a stereo, and from arson. She alleged that the phone lines had been cut, when investigation revealed that they had not been cut. She reported that some unexplained footprints and tire tracks existed, but these were not found.
 
 
 12
 The Fire Chief had dealings with Annie Beavers on several occasions concerning the house fire. During the course of his dealings with her, the Fire Chief came to have an opinion on her veracity. This opinion was not mere conjecture, but was based on several concrete occurrences. His testimony, therefore, had sufficient basis to meet a Rule 602 challenge.
 
 
 13
 The Beavers also maintain that the Fire Chief's testimony violated Rule 701(a). Rule 701(a) provides that "the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness...." As already stated, the Fire Chief met with Annie Beavers several times concerning the house fire and, according to him, she continually changed her story. His testimony is therefore "rationally based on the perception of the witness...."
 
 II.
 
 14
 The Beavers maintain that the jury instructions in this case were incorrect. Since no objection to the jury instructions was made at the trial level, the plain error standard applies to this situation.[1] Under the plain error standard, the court can find reversible error if a mistake is particularly egregious. Ratliff v. Wellington Exempted Village School Board of Education, 820 F.2d 792, 797 (6th Cir.1987).
 
 
 15
 The jury instructions, in part, stated with respect to damages:
 
 
 16
 Third, the value of the loss of the plaintiffs' right not to be discriminated against. In the eyes of the law, this right is so valuable that damages are presumed from the wrongful deprivation of it without evidence of actual loss of money, property, or any other valuable thing, and the amount of damages is a question peculiarly appropriate for the determination of a jury because each member of you has personal knowledge of the value of the right.
 
 
 17
 I call particularly to your attention the instruction just given that civil rights are so valuable that actual damages, not nominal damages such as one cent or one dollar, that is, actual compensatory damages are presumed from the wrongful deprivation of civil rights. What the instruction just given means is that if you find that the plaintiffs were wrongfully deprived of their rights not be discriminated against in the rental of property, you must compensate them for that loss in an amount which you consider to be the value you would place on your own rights the amount that you would consider necessary to make each of you whole if you were deprived of your right not to be discriminated against in this particular respect.
 
 
 18
 The Beavers maintain that the court's instructions on damages violate the principles set forth in Memphis Community School District v. Stachura, 477 U.S. 299 (1986). Stachura involved a 42 U.S.C. Sec. 1983 claim for violation of plaintiff's constitutional rights. In Stachura, the trial court gave the following instruction:
 
 
 19
 If you find that the Plaintiff has been deprived of a Constitutional right, you may award damages to compensate him for the deprivation. ...
 
 
 20
 The precise value you place upon any Constitutional right which you find denied to plaintiff is within your discretion. You may wish to consider the importance of the right in our system of government, the role which the right has played in the history of our republic, [and] the significance of the right in the context of the activities which the Plaintiff was engaged in at the time of the violation of the right.
 
 
 21
 Id. at 302.
 
 
 22
 The Stachura jury instruction was incorrect, according to the Supreme Court, because no "actual injury" was required by the charge. The Court felt that the instructions "permitted the jury to award damages based on its own unguided estimation of the value of such rights." Id. at 304. The Supreme Court, however, did state in Stachura "[w]hen a plaintiff seeks compensation for an injury that is likely to have occurred but difficult to establish, some form of presumed damages may possibly be appropriate." Id. at 310-11. Presumed damages must be tied to a compensatory purpose for harms that are "impossible to measure." Id. at 311. In Stachura, for example, the Court referred to a line of cases that allowed a recovery of presumed damages for an "inability to vote in a particular election...." Id. at 311, n. 14.
 
 
 23
 Under the Fair Housing Act, providing false information on the availability of rental units because of a party's race violates the statute and creates a cause of action. Havens Realty Corp. v. Coleman, 455 U.S. 363 (1982). A person who has suffered from a discriminatory act in violation of the Act "has suffered injury in precisely the form the statute was intended to guard against, ..." Id. at 373. No physical or mental injuries need be shown under the Act to justify a recovery.[2] Under the facts of this case, an actual injury occurred merely by committing discriminatory acts in violation of the Fair Housing Act. Furthermore, a discriminatory act in violation of the Fair Housing Act is a type of injury that is likely to have occurred but "impossible to measure." 477 U.S. at 311. Under these circumstances, the jury instructions can not be characterized as plain error.
 
 III.
 
 24
 The Beavers contend that the punitive damage award was improper. At the time that the discriminatory acts occurred, the Fair Housing Act had a $1000 cap on punitive damages. The Fair Housing Amendments Act of 1988, which became effective on March 12, 1989, removed the cap before the trial occurred. Normally, the law in effect at the time of the decision governs the remedy available to a successful plaintiff, not the law in effect at the time of the incidents giving rise to the lawsuit. See United States v. R.W. Meyer Inc., 889 F.2d 1497, 1505 (6th Cir.1989). A change in statute that allows greater punitive damages, however, raises due process-ex post facto concerns. Because the punitive damage award can be upheld on other grounds, however, the due process-ex post facto concerns need not be addressed here.
 
 
 25
 The Woods contend that the jury award should be upheld because there are no monetary limitations on what a jury may award as punitive damages under the section 1981 and section 1982 claims. The Beavers contend that because the verdict form did not delineate between the Civil Rights Acts claims and the Fair Housing Act claims, it is not possible to determine what the jury would have done if informed of the $1000 cap. But the Beavers did not object to the verdict form used by the court or to the charge given, nor did they propose their own. Since the jury was empowered under the Civil Rights Acts to award punitive damages in excess of $1000, no reversible error occurred when the jury chose to make such an award. Cf. Phillips v. Hunter Trails Community Ass'n, 685 F.2d 184, 191 (7th Cir.1982).
 
 IV.
 
 26
 The district court's decision to allow the Fire Chief to testify was not an abuse of discretion. The jury instructions concerning presumed damages were not plain error. Finally, the punitive damage award can be upheld under the authority of the Civil Rights Acts. The judgment of the district court, therefore, is AFFIRMED in all respects.
 
 
 27
 DAVID A. NELSON, Circuit Judge, concurring.
 
 
 28
 I write separately to note my belief that the trial court's charge to the jury contained a fairly significant error.
 
 
 29
 The court told the members of the jury that if the plaintiffs had suffered a loss of their civil rights, "you must compensate them for that loss in an amount which you consider to be the value you would place on your own rights [--] the amount that you would consider necessary to make each of you whole if you were deprived of your right not to be discriminated against in this particular respect."
 
 
 30
 It is widely believed to be improper for lawyers to invite juries to apply this sort of "golden rule" approach to the calculation of damages--and if it is wrong for lawyers to suggest such an approach, it is doubly wrong for a court to direct it.
 
 
 31
 At least two of our sister circuits have declared that "[a] 'Golden Rule' appeal in which the jury is asked to put itself in the plaintiff's position 'is universally recognized as improper because it encourages the jury to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence." Spray-Rite Service Corp. v. Monsanto Co., 684 F.2d 1226, 1246 (7th Cir.1982) (quoting Ivy v. Security Barge Lines, Inc., 585 F.2d 732, 741 (5th Cir.1978), rev'd on other grounds, 606 F.2d 524 (5th Cir.1979) (en banc), cert. denied, 446 U.S. 956 (1980)). Cf. Loose v. Offshore Navigation, Inc., 670 F.2d 493, 496 (5th Cir.1982): "What every lawyer should know is that a plea to the jury that they 'should put themselves in the shoes of the plaintiff and do unto him as they would have done unto them under similar circumstances.... [is] improper....' "
 
 
 32
 But to say that "every lawyer should know" that it is improper thus to invoke the golden rule is not to say that every lawyer's knowledge extends as far as it ought. Lawyers make mistakes, just as judges do, and the lawyer for the defendants in this case expressly approved the instructions both before and after they were read to the jury. "An attorney cannot agree in open court with a judge's proposed course of conduct and then charge the court with error in following that course." United States v. Sloman, 909 F.2d 176, 182 (6th Cir.1990). With some reluctance, therefore, I agree that the judgment of the trial court must be affirmed.
 
 
 
 [1]
 Fed.R.Civ.P. 51 provides, in pertinent part: "No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection."
 
 
 [2]
 Havens Realty Corp. involved certain volunteers, called testers, who sought out information concerning rental housing to insure that no racial steering was occurring. "That the tester may have approached the real estate agent fully expecting that he would receive false information, and without any intention of buying or renting a home, does not negate the simple fact of injury within the meaning of [the Fair Housing Act]." Id. at 374