# CAPITAL TRACTION COMPANY *v.* KING.

STREET RAILWAYS; ORDINANCES; SPEED OF STREET RAILWAY CARS; CORO-
NER'S INQUEST; DECEASED WITNESSES; ABUSE OF OFFICIAL DISCRETION.

1. So much of a regulation of the Interstate Commerce Commission as
   provides that street railway cars in the city of Washington shall
   not move at a greater rate of speed than 6 miles an hour at street
   crossings is void as beyond the power of the Commission to make,
   in view of the express provision of the act of Congress of May 23,
   1908 (35 Stat. at L. 246, chap. 190), under which the regulation
   was promulgated that such street cars shall be operated in the city
   of Washington at a speed not to exceed 15 miles an hour.

2. In an action to recover damages for the negligent operation of a street
   car, the admission in evidence, on the offer of the plaintiff, of a
   void regulation limiting the speed of street cars to 6 miles an hour,
   is error, as such a regulation, if valid, would authorize a finding
   of negligence as matter of law, regardless of the surrounding condi-
   tions, if the speed of the car causing the injury exceeded 6 miles an
   hour. (Citing *City & Suburban R. Co.* v. *Cooper*, 32 App. D. C.
   550, and *Capital Traction Co.* v. *Apple*, 34 App. D. C. 559.)

3. A coroner's inquest is not an action or judicial proceeding within the
   meaning of sec. 1065, D. C. Code (32 Stat. at L. 540, chap. 1329),
   which permits the testimony of a party who, after having testified
   at a time when he was competent to do so, dies or becomes insane
   or otherwise incapable of testifying, to be given in evidence in any
   trial or hearing in relation to the same subject-matter between the
   same parties or their legal representatives, in which case the op-
   posite party may testify in opposition thereto; so that it is not
   error, in an action to recover damages for wrongful death, for the
   trial court to exclude the stenographic report of the testimony of a
   witness who had testified at a coroner's inquest over the death of the
   plaintiff's intestate, but who has since died.

Note.—On the general question of admissibility, after death of adversary,
of testimony or deposition of party previously given or taken, relating to
a personal transaction with him, see note in L.R.A.1915F, 771.

As to violation by street railway company of ordinance limiting speed,
as evidence of negligence, see note in 5 L.R.A.(N.S.) 251.

4. In an action to recover damages for wrongful death, an assignment of error was held not to be well taken when based upon the refusal of the trial court to grant a motion for a new trial, on the ground that two material witnesses for the plaintiff had been so badly discredited by statements they were alleged to have signed prior to the trial that it was an abuse of discretion on the part of the court not to grant the motion.

No. 2843.    Submitted December 7, 1915.    Decided January 3, 1916.

HEARING on an appeal by the defendant from a judgment of the Supreme Court of the District of Columbia, on verdict, in an action to recover damages for the death of the plaintiff's intestate alleged to have been caused by the wrongful act of the defendant.                                    *Reversed.*

The facts are stated in the opinion.

*Mr. Frank J. Hogan* for the appellant.

*Mr. Wilton J. Lambert, Mr. Rudolph H. Yeatman, Mr. Frederick R. Whippler,* and *Mr. Frank S. Smith* for the appellee.

Mr. Justice ROBB delivered the opinion of the Court:

The plaintiff, Madeline A. King, appellee here, as administratrix of the estate of John L. King, deceased, brought suit against the defendant, appellant here, to recover damages for the death of her intestate occasioned by alleged negligence. The verdict and judgment were for the plaintiff.

On the evening of April 5, 1911, Mr. King, while crossing Pennsylvania avenue at Sixth street, N. W., was struck by one of defendant's street railway cars, and received injuries from which he died on April 14th, following, at the Emergency Hospital.

Over the objection and exception of the defendant, the plaintiff at the trial introduced in evidence the following regulation of the Interstate Commerce Commission: "No street car shall

move at a greater rate of speed than 15 miles an hour in the city of Washington, nor at a greater rate of speed than 20 miles an hour in the suburbs of said city. Street cars shall not exceed a rate of speed greater than 6 miles an hour at street crossings." The authority to pass this regulation must be found, if at all, in sec. 16 of the act of May 23, 1908 (35 Stat. at L. 246, chap. 190), providing "that every street railroad company * * * within the District of Columbia shall * * * supply and operate a sufficient number of cars, clean, sanitary, in good repair, with proper and safe power, equipment, appliances, and service, comfortable and convenient, and so operate the same as to give expeditious passage, not to exceed 15 miles per hour within the city limits, or 20 miles per hour in the suburbs, to all persons desirous of the use of said cars, without crowding said cars. The Interstate Commerce Commission is hereby given power to require and compel obedience to all of the provisions of this section, and to make, alter, amend, and enforce all needful rules and regulations to secure said obedience; and said Commission is given power to make all such orders and regulations necessary to the exercise of the powers herein granted to it as may be reasonable and proper; and such railroad companies or corporations, their officers and employees, are hereby required to obey all the provisions of this section, and such regulations and orders as may be made by said Commission." The section further provides that any violation of any of the provisions, or any of the orders or regulations of the Commission, shall be punished by a fine of not more than $1,000.

A careful reading of this section discloses that the power therein conferred upon the Commission was administrative only, that is to say, power to make regulations to secure obedience to the provisions of the section, and to make such reasonable and proper regulations as might be necessary to the exercise of the power granted. The latter provision concerns the subject-matter of the former, and contains no independent grant of power. The first provision defines and limits the power conferred upon the Commission, namely, to "require and compel

obedience" to all of the provisions of the section, and to make needful rules and regulations to that end. Owing to the diversity of subjects with which the section deals, Congress deemed it wise to be somewhat more explicit by conferring in terms authority to make "all such orders and regulations" as might be necessary to the exercise of the express power granted. This is shown by the first requirement of the act, which is that a sufficient number of cars shall be supplied. But for the above specific grant of authority, the power of the Commission to specify what should constitute a sufficient number of cars might have been questioned. The same might be said of other requirements. It follows, we think, that no authority to add to the act was conferred. Any regulation amounting to this would be legislation, and transcend the power of the Commission.

The power of the Commission to prescribe regulations to effectuate the purpose of many of the provisions of the act is plain, for without such power those provisions would be a nullity. But an exception to this somewhat general grant of power is found in the provision relating to the speed of cars, for that section does not purport to clothe the Commission with authority to say what shall be a reasonable rate of speed. On the contrary, it expressly provides that cars shall not exceed 15 miles an hour within the city limits, or 20 miles an hour in the suburbs. The Commission has said that they shall not exceed 6 miles an hour at street crossings. It matters not what time of the day or night cars approach these crossings, or whether there is a pedestrian upon the street, if they exceed 6 miles an hour someone is subject to a heavy penalty. The Commission arbitrarily has said that no car, at any time, within the limits of the city, shall exceed a speed of 6 miles an hour in crossing a street. If the Commission possessed authority to do this, it might have restricted the speed of cars to 6 miles an hour, or less, along certain streets or within certain zones of the District, upon the theory that the safety of the public required such restriction. It is plain that such a regulation would transcend the power of the Commission. We are unable to distinguish the requirement in question from the one sup-

posed. Authority for this conclusion will be found in *Morrill v. Jones,* 106 U. S. 466, 27 L. ed. 267, 1 Sup. Ct. Rep. 423; *United States* v. *Eaton,* 144 U. S. 677, 36 L. ed. 591, 12 Sup. Ct. Rep. 764; *United States* v. *United Verde Copper Co.* 196 U. S. 207, 49 L. ed. 449, 25 Sup. Ct. Rep. 222; *Williamson* v. *United States,* 207 U. S. 425, 52 L. ed. 278, 28 Sup. Ct. Rep. 163, and *United States* v. *George,* 228 U. S. 14, 57 L. ed. 712, 33 Sup. Ct. Rep. 412.

It does not necessarily follow that a speed of even 6 miles an hour at a street crossing is not a negligent and dangerous rate of speed. This would depend upon the surrounding conditions. But the introduction of this regulation in the present case authorized a finding of negligence as matter of law, regardless of surrounding conditions, if the speed of the car exceeded 6 miles an hour. *City & Suburban R. Co.* v. *Cooper,* 32 App. D. C. 550; *Capital Traction Co.* v. *Apple,* 34 App. D. C. 559. The possible injury to the defendant is apparent.

Immediately after the death of Mr. King, the coroner of the District conducted an inquest to determine in what manner the decedent came to his death. There was present at that inquest an attorney representing a son of the decedent. Among the witnesses who testified and whose testimony was stenographically reported was a Mr. Amos M. Brown. As he deceased prior to the trial, it was attempted to introduce his testimony given at the inquest, and the refusal of the court to permit its introduction is here assigned as error.

Sec. 1065 of the Code reads as follows: "If a party, after having testified at a time when he was competent to do so, shall die or become insane or otherwise incapable of testifying, his testimony may be given in evidence in any trial or hearing in relation to the same subject-matter between the same parties or their legal representatives, as the case may be; and in such case the opposite party may testify in opposition thereto." [32 Stat. at L. 540, chap. 1329.] We think that the learned trial justice was right in excluding this testimony. Clearly the inquest was not an action or judicial proceeding between the same parties or their legal representatives, within the meaning

of the Code. The concluding words of the section, allowing *"the opposite party"* to testify in opposition, lend cogency to this view. Jones on Evidence, 2d ed. 421, considering the exception to the hearsay rule, says: "Nor is the testimony of a witness given at a coroner's inquest admissible, under this exception, in a subsequent action, as the inquest is not a judicial proceeding between the same parties." *Cook* v. *New York C. R. Co.* 5 Lans. 401, was an action by an administrator, similar to the present action. The court said: "The testimony of the witness, John Brennan, before the coroner's inquest, was properly excluded. The inquest was no action or a judicial proceeding between these parties in any sense." See also *State use of Grice* v. *Cecil County,* 54 Md. 426; *Pittsburgh, C. & St. L. R. Co.* v. *McGrath,* 115 Ill. 172, 3 N. E. 439; *Germania L. Ins. Co.* v. *Ross Lewin,* 24 Colo. 43, 65 Am. St. Rep. 215, 51 Pac. 488. As the language of the Code is explicit, further discussion is unnecessary.

Under the third and last assignment of error it is alleged that the trial court erred in overruling defendant's motion for a new trial. It is contended that two material witnesses for the plaintiff were so badly discredited by statements they are alleged to have signed prior to the trial that it was an abuse of discretion on the part of the trial court not to grant the motion. Without setting forth the testimony of these witnesses, it is enough to say that we are satisfied that there was no abuse of discretion on the part of the trial court.

The judgment must be reversed, with costs, and the cause remanded for a new trial. *Reversed and remanded.*