**UNITED STATES of America**
**v.**
**William FRANKLIN.**
**Crim. No. 321-62.**

United States District Court
District of Columbia.
Nov. 13, 1964.

Joseph A. Lowther, Asst. U. S. Atty., for plaintiff.

Gary Bellow, Legal Aid Agency, New York City, for defendant.

YOUNGDAHL, District Judge.

During the presentation of its case, the government called certain witnesses who refused to testify on the ground that their answers might tend to be incriminating. The government then offered as evidence the prior trial testimony of those witnesses. The defendant's timely objection raised an issue which appears to be novel in view of the unique factual situation presented. Accordingly, the Court believes that the reasons for its rejection of the proffered testimony should be elaborated.

This case commenced in 1962 when the defendant and three others, Brooks, Carrell and Price, were indicted jointly for rape and robbery. The four were tried together before another judge of this court, and all were convicted of rape (the robbery dispositions are immaterial here). Franklin, Brooks and Price then appealed their convictions. The Court of Appeals affirmed as to Brooks and Price, but reversed Franklin's conviction because the lower court failed to instruct the jury that corroboration of identity was required in proof of rape, and corroboration was lacking as to Franklin. Franklin v. United States, 117 U.S.App.

D.C. 331, 330 F.2d 205 (1964). The present case is Franklin's retrial on remand.

In the original trial, both Brooks and Carrell took the stand and gave exculpatory testimony.[1] Both were cross-examined by the government.[2] Upon this retrial of Franklin, the government called Brooks and Carrell as witnesses. Each was sworn and then invoked his privilege against self-incrimination.[3] The government then sought to introduce their testimony from the original trial on the theory that they were unavailable witnesses who had previously given sworn testimony in the presence of the defendant who was then fully afforded his constitutional rights of confrontation and cross-examination. The defendant objected to the use of the prior statements of Brooks and Carrell on the grounds (1) that the statements were precluded by statute, 14 D.C.Code § 303 (Supp. III, 1964); and (2) that the defendant did not in fact have a full and proper opportunity to cross-examine these witnesses when they testified.

This is a difficult problem for the Court. A trial is a search for the truth. Generally, any evidence which will enhance that objective should be admitted to aid the trier of fact. However, it is axiomatic that this is not an absolute proposition. There are many other interests which society also seeks to further and protect which operate to exclude the use of certain evidence. There are also safeguards which have been developed and cherished throughout our legal tradition to insure that the testimony received will, in fact, reveal the truth. Most salient and respected of these safeguards is the right to cross-examine[4] an adverse witness. The significance of this right is underscored in the law of evidence by the general rule that hearsay testimony is inadmissible. Again, however, this is not an absolute edict. In some of the myriad contingencies of legal life, considerations · exist which, on balance, outweigh the objection that testimony is hearsay. Thus, another general rule permits the introduction of former testimony where a potential witness, is, for example, deceased, but where the party against whom the testimony is to be used had an opportunity to cross-examine that witness on the prior occasion.[5] This rule embodies a balancing of conflicting factors in favor of accepting evidence spoken outside the presence of the trier of fact and without a present opportunity to cross-examine. Thus, the issue here is whether the prior statements of Brooks and Carrell are to be received as competent evidence in the circumstances of this case.

■■ The initial consideration is an interpretation[b] of the District of Columbia Code provision which ostensibly covers this precise issue. Section 303 of Title 14 (Supp. III, 1964) provides:

"When a party, after having testified at a time while he was competent to do so, dies or becomes incapable of testifying, his testimony may be given in evidence in any

---

1. Brooks' testimony commences on page 237 and Carrell's begins on page 280 of the trial transcript in United States v. Brooks, D.D.C., Crim. No. 321–62.

2. The government's cross-examination of Brooks is found at pages 252–64, 274–76, and of Carrell at 286–94 of the trial transcript, supra note 1.

3. After the privilege was invoked, the Court appointed attorneys to consult with Brooks and Carrell as to their rights. Subsequent to consultation, the two were recalled to the stand, re-examined, and each again invoked the privilege. These entire proceedings were held outside the presence of the jury.

4. E.g., Alford v. United States, 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624 (1931); Collazo v. United States, 90 U.S.App.D. C. 241, 196 F.2d 573, cert. denied, 343 U.S. 968, 72 S.Ct. 1065, 96 L.Ed. 1364 (1952).

5. See, e.g., McCormick, Evidence § 230 et seq. (1954). As indicated in McCormick's treatise, there is a semantic dispute as to whether "former testimony" is an exception to the hearsay rule, or whether it is not hearsay at all. The label is unimportant for present purposes.

**340**

trial or hearing in relation to the same subject-matter between the same parties or their legal representatives, as the case may be; and in such a case the opposite party may testify in opposition thereto."

This statute poses at least two obstacles as a satisfactory solution to the unique problem before the Court.[6] First, are Brooks and Carrell "parties" within the meaning of Section 303? Secondly, if so, does the phrase "or becomes incapable of testifying" contemplate a witness who is present in court, competent to testify, who actually takes the stand and is sworn, but who then invokes his privilege against self-incrimination? The Court's conclusion on the former question obviates a decision on the latter. By its clear language, the statute is applicable only where the testimony sought to be used was given by a party and where the later proceeding in which it is offered is "between the same parties or their legal representatives." Although Brooks and Carrell were parties when they testified, neither is a party at this trial, nor is Franklin in any sense their legal representative. In other words, as the Court reads the provision, to be admissible, the testimony must be from one who was a party in the original proceedings *and* who is a party (personally or by legal representative) to the proceedings in which the prior testimony is offered. This conclusion is fortified by the final clause of Section 303 which provides that after the prior testimony is received, "the opposite party may testify in opposition thereto." [7]

Therefore, Section 303 is not applicable on the facts of this case. However, this conclusion does not finally dispose of the Court's problem. It may still be argued that the statute is not exclusive and that the statements are admissible under the general common law rule of unavailable witnesses, referred to above.

Whether Section 303 pre-empts all of the common law on the question of prior testimony; or rather, whether in certain cases prior testimony not within its scope is nevertheless admissible, is not necessary to determine here. The Court concludes that even if the common law rule admitting prior testimony has present vitality in this jurisdiction, it is not applicable on the facts of this case.

All of the cases relied on by the government to support the general rule of admissibility are distinguishable in important factual respects from the case at hand. In Exleton v. State, 30 Okl.Cr. 224, 235 P. 627 (1925), the witness whose testimony was offered by the government at the defendant's trial had been arrested with the defendant for the same offense, but was tried separately. At a preliminary hearing of the defendant alone, that witness was called as a state's witness and was cross-examined fully, as an adverse witness, by the defendant's counsel. Similarly, in Woodward v. State, 21 Ala.App. 417, 109 So. 119 (1926), the witness involved had been jointly indicted with the defendant, but was tried alone after a severance, and then voluntarily testified at the defendant's first trial. When the witness refused to testify at the retrial, the court permitted other witnesses, who had been present at the first trial and had heard the testimony and cross-examination, to relate the substance of the testimony of the absent witness. And again, in State v. Reidie, 142 Kan. 290, 46 P.2d 601 (1935), the general rule was applied where the witness, an accomplice of the defendant's failed to testify at the defendant's trial after having voluntarily testified at a preliminary hearing for the defendant. In all of the above cases, the witnesses initially testified for the government against the defendant; but not so in this case where the witnesses testified as defendants in their own be-

---

6. A third possible problem unnecessary to deal with here is whether the subject matter is the same. It may be argued that the subject matter of the first trial as to this testimony was the guilt of

Brooks and Carrell; whereas the subject matter of the present hearing is the guilt of Franklin.

7. Cf., Capital Traction Co. v. King, 44 App.D.C. 315 (1916).

half. In all of the above cases, the defendant not only had an opportunity to cross-examine, but in addition had compelling reason to utilize that opportunity to demonstrate that the witnesses were not telling the whole truth; but not so in this case where the witnesses were not adverse and where a vigorous cross-examination of an associate might have reflected badly on the defendant. In all of the above cases, it would have been in the defendant's best interests to capitalize on his opportunity to cross-examine in order to discredit and impeach the credibility of the witnesses against him; but not so in this case where the witnesses' testimony did not accuse the defendant, and impeachment of the others may well have undermined his own assertion of innocence. In all of the above cases, the subject matter or issue of the testimony illicited on direct examination was the defendant's guilt, but not so in this case where it was the innocence of co-defendants. Thus, in this case the "opportunity" to cross-examine Brooks and Carrell was meaningful and real to the government, but the "opportunity" to the defendant was ineffective in substance. So, too, in Christoffel v. United States, 91 U.S.App.D.C. 241, 200 F.2d 734 (1952), where the court permitted prior testimony of a deceased witness, that witness testified against and was adverse to the defendant, which factor provided the incentive to the defendant to subject the witness "to the ordeal of a cross-examination" in sufficient scope to meaningfully satisfy his constitutional right to be confronted with the witnesses against him, see Mattox v. United States, 156 U.S. 237, 244, 15 S.Ct. 337, 39 L.Ed. 409 (1895).

■ The Court does not suggest that there must be a zealous cross-examination when the testimony is originally offered in order for it later to be admissible under the unavailable witness rule. It is assumed, arguendo, that an "opportunity" for cross-examination is sufficient. However, the Court believes that the opportunity must be full, substantial and meaningful in view of the realities of the situation. Accordingly, the Court holds that where a witness for the government in a criminal trial is unavailable, his prior testimony in his own behalf as a defendant is not admissible in a later trial against a co-defendant who, at the time the testimony was given, had a naked opportunity, but no real need or incentive to thoroughly cross-examine his then co-defendant.[8]

---

8. The extent of actual cross-examination of Brooks and Carrell by the other co-defendants in this capital case is noteworthy. When Brooks testified, neither Carrell nor Price cross-examined. Franklin's attorney asked but few questions, see pages 276–277 of the trial transcript, supra, note 1. When Carrell testified, neither Brooks nor Price cross-examined, and Franklin's attorney asked only two questions, see transcript, supra, at 295.