**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Collin TAPLIN, Jr., Defendant–Appellant.**

**No. 90–6198.**

United States Court of Appeals, Sixth Circuit.

Argued July 29, 1991.

Decided Jan. 29, 1992.

Ed Bryant, U.S. Atty., Frederick H. Godwin, Asst. U.S. Atty. (argued and briefed), Office of U.S. Atty., Memphis, Tenn., for plaintiff-appellee.

Ross E. Alderman, Sr., Asst. Pub. Defender, Davidson County Public Defender's Office, Nashville, Tenn. (argued and briefed), for defendant-appellant.

Before NELSON and SUHRHEINRICH, Circuit Judges, and HARVEY, Senior District Judge.*

SUHRHEINRICH, Circuit Judge.

At issue in this appeal is whether the district court erroneously admitted into evidence the pretrial testimony of a co-conspirator. Defendant submits that Fed.R.Evid. 804(b)(1) and the Confrontation Clause of the Sixth Amendment were violated by the admission at trial of statements made in a suppression hearing. Because we find a breach of Rule 804(b)(1), we reverse.

I

In February 1989 defendant Collin Taplin, Jr., and Preston Tillman Bailey, Jr., conspired to transport cocaine from Houston, Texas to Nashville, Tennessee. This business venture ended when both were charged with possession with intent to distribute cocaine and aiding and abetting, in violation of 21 U.S.C. § 841(a)(1) and 18

---

* The Honorable James Harvey, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

U.S.C. § 2, and conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. § 846. Both defendants pled not guilty.

In August 1989 Taplin filed a motion to suppress evidence, and Bailey asked to join. After Taplin's motion was granted, Bailey took the stand in support of his own motion. Bailey discussed the conspiracy to transport cocaine, Taplin's recorded telephone calls inducing him to visit Jackson, Tennessee, and the circumstances of his own arrest. Upon completion of Bailey's testimony Taplin filed a second suppression motion, which also was granted. Bailey's motion was denied for want of standing.

Bailey elected not to testify during Taplin's separate trial, invoking his Fifth Amendment privilege against self-incrimination. The government moved to admit portions of the testimony Bailey furnished at the suppression hearing. The district court admitted this hearsay testimony pursuant to 804(b)(1).

Following a two-day jury trial, Taplin was found guilty of both charges. He was sentenced to serve 60 months in prison on each count, to run concurrently.

## II

Taplin submits that Bailey's pretrial testimony is inadmissible hearsay and violates his Sixth Amendment right of confrontation. Because we agree with Taplin's evidentiary conclusion, there is no need to reach the merits of his constitutional argument.

■ We will not reverse a trial court's evidentiary rulings "absent a clear showing of abuse of discretion." *United States v. Hickey*, 917 F.2d 901, 904 (6th Cir.1990). We find abuse of discretion when a court "improperly applies the law or uses an erroneous legal standard." *Black Law Enf. Officers Ass'n. v. City of Akron*, 824 F.2d 475, 479 (6th Cir.1987) (quoting *Christian Schmidt Brewing Co. v. G. Heileman Brewing Co.*, 753 F.2d 1354, 1356 (6th Cir.), *cert. dismissed*, 469 U.S. 1200, 105 S.Ct. 1155, 84 L.Ed.2d 309 (1985).

■ Rule 804(b)(1) provides:

(b) **Hearsay exceptions.** The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

(1) **Former testimony.** Testimony given as a witness at another hearing of the same or a different proceeding ... if the party against whom the testimony is now offered ... had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

The predicate of unavailability is satisfied here and is not contested on appeal. But the unmet requirements of opportunity and similar motive place Bailey's statements beyond the reach of 804(b)(1).

■ The opportunity to develop testimony offered at another proceeding is not established by presence alone. The mere fact that Taplin's attorney was in the courtroom during Bailey's suppression testimony and was asked by the presiding judge if he had any questions, is not proof that Taplin was prepared for a full and thorough cross-examination of the witness.

■ The kind of proceeding at which testimony is offered conditions the quality of opportunity to develop that testimony. It is well-settled that testimony presented at a trial provides a defendant with an adequate occasion to fully examine the witness. *Mattox v. United States*, 156 U.S. 237, 15 S.Ct. 337, 39 L.Ed. 409 (1895). By contrast, testimony presented at a grand jury proceeding is not subject to cross-examination and therefore does not qualify under the rule. *Young v. United States*, 406 F.2d 960 (D.C.Cir.1969).

■ In order for a suppression hearing to provide the opportunity for testimonial development required by the rule, we think it essential that the hearing involve the defendant qua defendant. *United States v. Rundle*, 417 F.2d 305 (3d Cir.1969), *cert. denied*, 397 U.S. 1050, 90 S.Ct. 1388, 25 L.Ed.2d 665 (1970). If the motion for which testimony is elicited does not require the defendant's presence, then the fortuity of his appearance is not the equivalent of a full opportunity to develop testimony. Opportunity under 804(b)(1) means more than naked opportunity. *United States v. Franklin*, 235 F.Supp. 338, 341 (D.C.1964).

In the present case, Bailey's testimony was offered to demonstrate his standing to join Taplin's motion. Taplin's presence was not required for this determination. Nor does the fact that Taplin later made a second motion establish his compulsory presence during Bailey's motion. We therefore hold that Taplin did not have the requisite opportunity to develop Bailey's testimony at the suppression hearing.

The dissent agrees with the standard set forth here but argues that Taplin's presence was no fortuity. Experience persuades me that the facts as copiously narrated by the dissent do not amount to the kind of opportunity required by the federal rule. The dissent's theory imposes an unjustifiable burden on future litigants. Litigants would be forced to develop testimony in a circumscribed proceeding for an unknown reason, or risk having the testimony used against them later under unforeseen circumstances. The rules of evidence do not place parties in so untenable a litigating position.

■ Taplin also lacked a similar motive. The traditional formulation of the similar motive requirement is that the two proceedings must reflect a "substantial identity of issues." 8 James W. Moore et al., Moore's Federal Practice § 804.04[3] (2d ed. 1989). Identity of issues ensures that the opposing party had a meaningful opportunity to develop testimony when it was first offered. *United States v. Wingate*, 520 F.2d 309, 316 (2d Cir.1975), *cert. denied*, 423 U.S. 1074, 96 S.Ct. 858, 47 L.Ed.2d 84 (1976).

The issue at the suppression hearing that brought forth Bailey's testimony was his own expectation of privacy in a vehicle searched by police. The issue at trial was Taplin's guilt or innocence. Taplin had no incentive to examine Bailey at the suppression hearing because the latter's standing was not an issue materially affecting Taplin. However, Taplin's incentive to develop testimony at trial was much greater owing

to a concern for his ultimate fate. A dissimilar motive defeats the 804(b)(1) claim.[1]

### III

To sum up, the district court's decision to admit Bailey's suppression hearing testimony at Taplin's trial was reversible error. Taplin's fortuitous presence at the suppression hearing was not opportunity as contemplated by the former testimony exception to the hearsay rule. Nor can it be said that Taplin's motives at the two proceedings were similar. We therefore REVERSE.

DAVID A. NELSON, Circuit Judge, dissenting.

I do not believe that defendant Taplin has made a "clear showing" that the district court abused its discretion in admitting Mr. Bailey's pretrial testimony under Rule 804(b)(1). Accordingly, and because I can discern no violation of the Sixth Amendment's Confrontation Clause, I must dissent from the reversal of the conviction.

Judge Todd, who presided over defendant Taplin's two-day trial, was the same judge who presided over the five-day suppression hearing that preceded the trial. In ruling at trial on the admissibility of the testimony given by Mr. Bailey at the suppression hearing, Judge Todd thus had first-hand knowledge not only of the extent and nature of defendant Taplin's participation in the hearing, but also of the reason for his attendance and the length of time available to his lawyer for advance preparation. The written record may not tell us everything that Judge Todd knew about these matters, but it tells us a great deal—and my reading of the record differs enough from my colleagues' reading to suggest that it might be appropriate for me to describe my understanding of the pertinent parts of the record in some detail.

On June 19, 1989, as I understand it, Messrs. Taplin and Bailey were indicted,

---

1. The dissent believes that Taplin "had a very strong motive to discredit Mr. Bailey or put his testimony in a different light if he possibly could." This approach misstates the inquiry. Whether Taplin had the requisite motive ought

not be determined by a judge's subjective judgment. As outlined above, the question is whether the *issues* are substantially similar such that the incentive to develop testimony is similar in the two proceedings.

together, in a single indictment. Both defendants thereafter filed written suppression motions, defendant Taplin on August 22 and defendant Bailey on August 29.

Defendant Taplin's suppression motion, which was filed on his behalf by attorney A.C. Wharton, asked the court to suppress all evidence obtained on the date of Mr. Taplin's arrest, including any statements made by Mr. Taplin at the time of his arrest "and any evidence which may have been obtained *as a result of said arrest.*" (Emphasis supplied.) Defendant Bailey's motion, filed by attorney Robert M. Friedman, asked the court "to suppress or determine admissibility prior to trial of all searches, seizures, confessions, or admissions...." Mr. Friedman filed an amended version of this motion shortly before the start of the suppression hearing.

The suppression hearing got under way at 10:25 a.m. on March 20, 1990. Attorney Wharton was present for defendant Taplin, and attorney Friedman was present for defendant Bailey.

At the very outset of the hearing the government raised a question as to defendant Bailey's standing to seek suppression of anything other than the tape recordings of incriminating telephone conversations that Taplin had initiated with Bailey, at the instigation of the police, following Taplin's arrest. Judge Todd deferred his ruling on the standing issue, but announced that defendant Bailey could participate fully in the suppression hearing through his counsel, Mr. Friedman. (Mr. Friedman had argued, in this connection, that he needed to participate in all phases of the hearing because he was not certain that the motion filed by attorney Wharton extended to the tape recordings. Mr. Wharton, as we shall see, subsequently took the position that his suppression motion did indeed extend to the tapes.)

At the end of the first day of the suppression hearing Judge Todd stated that the hearing would resume at 9:30 a.m. on Tuesday, March 27, and would be concluded that same day. This proved to be overly optimistic; the March 27th session began on time, but it was adjourned at 5:15 p.m.

with no end in sight. Subsequent sessions, each lasting a full day, were conducted on Wednesday, March 28, and Friday, March 30. Both attorney Wharton and attorney Friedman participated actively at every stage of these proceedings.

Toward the end of the March 30th session, attorney Wharton asked that a police officer named Bobby Lindsey be called to testify. While waiting for officer Lindsey to take the stand, Mr. Wharton asked the court to suppress "the evidence"—presumably meaning the evidence addressed in Mr. Wharton's August 22nd suppression motion—on the basis of the very extensive testimony already presented. The court agreed to do so, ruling from the bench that "the cocaine that was taken from Mr. Taplin's car is hereby suppressed," along with the statements given by Mr. Taplin to the police. No one seems to have focused, at this point, on the tapes of the telephone conversations between Taplin and Bailey.

After the court announced its ruling, attorney Wharton asked if his presence would still be required at the hearing. The following exchange ensued:

"THE COURT: Well, I'm going to give you the same right that I gave Mr. Friedman. We're now on Mr. Friedman's motion, and you have the right to participate in it if you want to.

MR. WHARTON: Thank you. I *will.*" (Emphasis supplied.)

Attorney Friedman then called officer Lindsey, the same witness Mr. Wharton had been planning to call. When it became clear that Mr. Friedman would not finish with officer Lindsey that day, Judge Todd stated that the hearing would be resumed on Monday morning, April 2nd. Mr. Friedman said he had another matter set for Monday, so Judge Todd proposed that the hearing be continued to Wednesday, April 4th. Mr. Wharton, when asked about his availability on the 4th, inquired if he could be excused. Judge Todd responded as follows:

"I'm not going to require you to be here, but your client is a defendant in this case, and he has a right to be present at all hearings that take place that affect his interest. And since he's named as a

co-conspirator and his co-conspirator has got a hearing going, it seems to me he would want to be here. And if I were you, I'd want to be here."

Mr. Wharton explained that he might have to appear before Judge Turner on Wednesday the 4th, but Judge Todd said "I'll tell Turner that you're going to be with me on Wednesday * * * Now you need to let [Judge Turner] know also, but I'll serve as your alibi. I'll verify it." Judge Todd also suggested that Mr. Wharton explain "that this old judge up in Jackson is a cantankerous old guy and has got you coming back Wednesday and there is nothing you can do about it and that if you're not up here, he's going to put you in jail." By the time the Friday session was adjourned, no one could possibly have doubted that Mr. Wharton was expected to be present when the suppression hearing resumed on Wednesday.

The government took steps to make sure that Mr. Taplin, who was free on bond, would be present on Wednesday also. The transcript discloses that the prosecutor (Mr. Godwin) and attorney Wharton addressed the following statements to the court during the morning session on April 4th:

"MR. GODWIN: Just one thing, Your Honor, just for the record, and I want to do it in Mr. Wharton's presence. The United States subpoenaed Mr. Taplin last Friday to be here today.

MR. WHARTON: He is under their subpoena, the government's subpoena. *Of course, he was directed to be here anyway.*" (Emphasis supplied.)

Officer Lindsey was the first witness to take the stand on Wednesday, and attorney Wharton cross-examined him at some length on behalf of defendant Taplin. The next witness was defendant Bailey. Before Bailey took the stand, however, attorney Wharton explicitly pointed out to the court that there had not yet been a ruling on Wharton's request for suppression of the tape-recorded telephone conversations:

"Your Honor ruled on the admissibility of the alleged contraband. Your Honor ruled specifically that since the statements allegedly made at the highway patrol station, and I suppose those allegedly made out there on the highway at some point in time, were not sufficiently remote in time from the initial taint so as to purge him of that taint and that those statements are also barred.

We now have, still in existence, the taperecorded conversations between Mr. Taplin and Mr. Bailey. *There has been no ruling on that.* I don't know whether they're to be suppressed or not as to Mr. Taplin, is what I'm speaking of now. That's a key question because the conspiracy claim ties right into those tapes." (Emphasis supplied.)

Judge Todd declined to give Mr. Wharton a ruling on the tapes at this juncture. At the time Mr. Bailey took the stand, therefore, it would seem indisputable that attorney Wharton believed there was still a portion of his suppression motion that remained to be decided.

After the completion of Bailey's testimony, Mr. Wharton renewed his request for a ruling on the suppression of the tapes:

"My motion covered everything that comes out of that arrest, which Your Honor has already ruled about the statements purportedly made in the highway patrol station and all. Our contention is that everything that flowed from that initial unlawful detention and seizure of his person out there, that this whole chain of events was so compact in time that nothing has been purged of the taint, which would include anything Mr. Taplin may have purportedly said on those tapes. And we move that the tapes be treated in the same manner as was the alleged statements, and certainly the alleged cocaine."

Judge Todd declined to rule on the tapes until he had heard all of the evidence, noting that "[t]he hearing is still open. You're still in it, Mr. Wharton."

The only witness to testify after Mr. Bailey was defendant Taplin—who was called by his own lawyer, Mr. Wharton. Closing arguments were then presented by the prosecutor, Mr. Wharton, and Mr. Friedman. In that order.

Following the closing arguments, Judge Todd completed his ruling on Mr. Whar-

ton's suppression motion. He ruled that a certain piece of documentary evidence found in the car at the time of the arrest would be suppressed, but that the tape-recordings of defendant Taplin's subsequent telephone conversations with defendant Bailey would not be suppressed.

Against this background, I can see no reason to assume that attorney Wharton—who had been given five days' advance notice of the Wednesday hearing, and who understood that his client had been "directed" to appear at that time—would not have been prepared to conduct a full and thorough cross-examination of defendant Bailey had he thought that such a cross-examination might be helpful. Defendant Bailey was obviously subject to cross-examination by Mr. Wharton—the latter had interposed objections to several of the questions posed to Bailey during direct, and Judge Todd expressly asked Mr. Wharton if he wished to cross-examine—and because the ruling on defendant Taplin's suppression motion was not completed until the very end of the hearing, it seems to me that defendant Taplin was necessarily involved in the hearing "*qua* defendant." His presence was no fortuity, and his lawyer's extensive participation on the final day of the hearing bespeaks far more than a "naked opportunity" to participate.

And what of attorney Wharton's motive to cross-examine Bailey on behalf of defendant Taplin? Judge Todd—who was allowing the attorneys considerable latitude in cross-examination—probably had a better feeling for the reality of the situation, again, than any of us is likely to have. As for me, however, I am at something of a loss to understand why defendant Taplin would not have had a very strong motive to discredit Mr. Bailey or put his testimony in a different light if he possibly could.[1] The tape recordings of the telephone conversations between Taplin and Bailey were obvi-

ously damaging to Taplin, and if Taplin could show that Bailey had not been a participant in the conspiracy at all, it would obviously strengthen Taplin's chances of succeeding on his still-pending motion for suppression of the tapes. Unfortunately, as every trial lawyer knows, even the strongest desire to cross-examine a damaging witness must sometimes be resisted because of the certain knowledge that cross-examination would do more harm than good.

In sum, I believe that defendant Taplin had both a meaningful opportunity to cross-examine Mr. Bailey and a motive to do so similar to the motive that would have existed if Mr. Bailey had been willing to testify at Taplin's trial. I see no abuse of discretion as far as Judge Todd's application of the rules of evidence is concerned. Unlike the panel majority, therefore, I would reach the merits of defendant Taplin's argument that the introduction of the pretrial testimony violated his Sixth Amendment right to be confronted with the witnesses against him.

It seems to me that the constitutional argument is conclusively answered by the Supreme Court's decision in *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). *Roberts* teaches that when a hearsay declarant is not present at trial, the Confrontation Clause requires only that he be unavailable and that the evidence fall within a "firmly rooted hearsay exception." *Id.* at 56, 100 S.Ct. at 2534.[2] It is well settled that Rule 804(b)(1), Fed.R.Evid., constitutes such an exception. See *4 Weinstein's Evid.* ¶ 800[04], at 800–31.

---

**1.** Bailey's credibility was crucial to the issue of whether the tapes should be suppressed, the tapes were crucial to the issue of Taplin's guilt or innocence, and Bailey's credibility was crucial to the latter issue as well. In this factual context, it seems to me that Judge Todd's ruling clearly passes muster under the test formulated by the Court of Appeals for the Second Circuit

in *United States v. Wingate*, 520 F.2d 309, 316 (2d Cir.1975), *cert. denied*, 423 U.S. 1074, 96 S.Ct. 858, 47 L.Ed.2d 84 (1976): "the issues in the two proceedings are sufficiently similar to assure that the opposing party had a meaningful opportunity to cross-examine when the testimony was first offered."