21 F.3d 428
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Clarence E. HESTER and Donald James Davenport, Defendants-Appellants.
 Nos. 92-1947, 92-2022.
 United States Court of Appeals, Sixth Circuit.
 April 15, 1994.
 
 Before: Milburn and Boggs, Circuit Judges; and Miles, Senior District Judge.*
 PER CURIAM.
 
 
 1
 Clarence Hester and Donald James Davenport were each convicted after a jury trial on three counts of armed bank robbery, in violation of 18 U.S.C. Sec. 2113(d), three counts of conspiracy to commit armed bank robbery, in violation of 18 U.S.C. Sec. 371, and three counts of carrying a firearm during a crime of violence, in violation of 18 U.S.C. Sec. 924(c)(1). Both appeal their convictions and sentences. For the reasons stated below, we AFFIRM both the convictions and sentences.
 
 FACTS
 
 2
 Between October 23, 1991, and November 23, 1991, three armed men robbed federally insured banks in the Detroit, Michigan metropolitan area. On October 23, 1991, three men robbed the Comerica Bank in Dearborn Heights, Michigan; on November 5, 1991, three men robbed the Michigan National Bank in Dearborn, Michigan; and, on November 20, 1991, two men robbed the National Bank of Detroit ("NBD") in Romulus, Michigan. In each robbery, the robbers wore nylon stockings over their heads and at least one of them carried a firearm.
 
 
 3
 On the morning of November 20, 1991, prior to the robbery of the National Bank of Detroit, FBI agents arrested Orlando Braxton-Davis in connection with the previous armed bank robberies.
 
 
 4
 On January 3, 1992, a federal grand jury returned a multi-count indictment against Clarence Hester, Donald James Davenport, and three others. The indictment charged both Hester and Davenport with three counts of armed bank robbery, three counts of conspiracy to commit armed bank robbery, and three counts of carrying, and aiding and abetting each other in carrying, a firearm during a crime of violence.
 
 
 5
 Hester filed a pretrial motion to suppress two statements which he made to agents following his arrest. Hester made the first statement to an FBI agent as the two rode together in the elevator of the federal building following Hester's arrest. Hester told the agent that he knew federal authorities were looking for him and that he was surprised that it had taken them so long to catch him. Hester indicated to the agent that he knew that federal authorities had been looking for him at a house on 23rd Street in Detroit the previous week and that they had just missed him. Hester made the second statement to an FBI agent who questioned him about the NBD robbery. After he had advised Hester of his Miranda rights, the agent asked Hester if he was aware that the bank manager had to be hospitalized because of a heart condition.[1] Hester responded, "We didn't hurt anybody." Hester argued that these statements were obtained in violation of his constitutional rights.
 
 
 6
 After holding an evidentiary hearing, the district court ruled that both statements were admissible; the court found the first statement to have been made spontaneously, while the second statement had been made after Hester waived his Miranda rights.
 
 
 7
 At trial, Orlando Braxton-Davis testified on behalf of the government. Braxton-Davis stated that he, Hester, and Davenport had robbed the Comerica Bank in Dearborn Heights and the Michigan National Bank in Dearborn. He also testified that they had planned to rob the NBD Bank in Romulus. He had specifically discussed this robbery with Hester, who told him that the "regulars" would be involved. Braxton-Davis understood the regulars to be Hester, Davenport, and himself. The plan was to rob all the tellers in the bank and obtain as much money as possible. Braxton-Davis testified that on November 20, 1991, he met with Hester in the morning to discuss the robbery. Hester told him that the robbery would take place after lunch, and they made plans to meet later. However, Braxton-Davis was arrested before the scheduled meeting and, therefore, was unable to reconvene with Hester.
 
 
 8
 Jeanie Drake, who was employed in a business located next to the NBD Bank in Romulus at the time it was robbed, also testified for the government. Drake stated that in the week prior to the robbery of the bank, she had seen an unfamiliar man near the bank. The man was standing near a newspaper box and appeared to be waiting for someone. She saw the same man a few days later standing in the same vicinity and walking around. Later, she saw the same man accompanied by another man. They were standing across the street from the bank. At approximately 1:30 p.m. on the day the bank was robbed, she saw these two men again and had the opportunity to view them closely. They were dressed in black and wore baseball caps. One of the men wore white tennis shoes and had nylon on his head which showed from under the baseball cap. Drake identified photographs of Hester and Davenport in a photospread as the two men she had seen. While Drake was testifying on direct examination, the Assistant United States Attorney asked if everyone in the courtroom would stand. He then asked Drake whether anyone looked familiar to her. She initially identified only Hester as one of the men she had seen on the day of the third robbery. After Hester's cross-examination, the court allowed a brief recess, during which Drake had an opportunity to observe more of the people in the courtroom. When court reconvened, the Assistant United States Attorney asked the district judge if he could reopen his direct examination of Drake. The court permitted the redirect examination during which Drake testified that she recognized Davenport as the man whom she had seen on the day of the robbery wearing the white tennis shoes and nylon under his baseball cap.
 
 
 9
 On March 27, 1992, the jury returned guilty verdicts on all counts against Hester and Davenport. On July 22, 1992, Hester and Davenport were sentenced. Hester was sentenced to 168 months concurrent on the robbery counts; 60 months concurrent on the conspiracy counts, 5 years consecutive on the first gun count, and 20 years consecutive on each of the two subsequent gun counts, pursuant to 18 U.S.C. Sec. 924(c). Davenport was sentenced to 150 months concurrent on the robbery counts; 60 months concurrent on the conspiracy counts, 5 years consecutive on the first gun count, and 20 years consecutive on each of the two subsequent gun counts, pursuant to 18 U.S.C. Sec. 924(c).
 
 DISCUSSION
 
 10
 Both Hester and Davenport appeal their convictions and sentences. Hester argues that the district court erred in denying his motion to suppress. He further argues that without his statement that "We didn't hurt anybody," the evidence would have been insufficient to convict him of the NBD robbery. He also argues that the district court erroneously applied 18 U.S.C. Sec. 924(c) because his three convictions should have been counted as only one conviction for purposes of Section 924(c). Davenport argues that the district court erred in allowing the government to reopen its direct examination of Drake in order to allow her to identify Davenport. Davenport further argues that the evidence was insufficient to convict him of the NBD robbery. He likewise appeals the district court's application of Sec. 924(c).
 
 
 11
 Hester's statements.
 
 
 12
 This court will not reverse a district court's evidentiary ruling without a clear showing of abuse of discretion. United States v. Taplin, 954 F.2d 1256, 1258 (6th Cir.1992). "[W]hen a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error." Anderson v. Bessemer City, 470 U.S. 564, 575 (1985). This is so because "only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said." Id.
 
 
 13
 In this case, the district court did not abuse its discretion in allowing the government to introduce the statements made by Hester. The court held an evidentiary hearing to determine the circumstances under which the statements were made. At the hearing, Hester and an FBI agent gave differing, though plausible, versions of what happened. The district court then decided that the agent's version was more credible. No other evidence was introduced to contradict the agent's story. Therefore, we will not upset the finding of the district court.
 
 
 14
 Redirect examination of Drake.
 
 
 15
 Rule 611 of the Federal Rules of Evidence states that "[t]he court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting of evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment." Fed.R.Evid. 611(a).
 
 
 16
 We review the district court's ruling for an abuse of discretion. Taplin, 954 F.2d at 1258. In this case, the district court acted within its discretion in allowing the government to reopen its direct examination of Drake. The redirect examination helped ascertain the truth by allowing Drake to respond accurately to the government's question as to whether she recognized anyone in the courtroom. The redirect occurred while the government was still presenting its case in chief. Moreover, the questioning pertained only to Davenport, who had a full opportunity to cross-examine Drake and to attack the reliability of her identification by pointing out that she had not been able to identify Davenport previously. We find no abuse of discretion.
 
 
 17
 Sufficiency of the evidence.
 
 
 18
 In reviewing the sufficiency of the evidence, we must decide whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). In doing so, we must view the evidence in the light most favorable to the prosecution. Id. In making our determination, circumstantial evidence is entitled to the same weight as direct evidence. United States v. Gallo, 763 F.2d 1504, 1518 (6th Cir.1985), cert. denied, 475 U.S. 1017 (1986).
 
 
 19
 In this case, the evidence was sufficient to convict both Hester and Davenport of all three bank robberies, including the NBD robbery on November 20, 1991. Orlando Braxton-Davis testified that he had talked with Hester about the NBD robbery. Hester told him that the "regulars" would be involved, which Braxton-Davis understood to be Hester, Davenport, and himself, all of whom had participated in the previous robberies. The plan was to rob the bank after lunch on November 20, 1991, because they believed that more money would be in the bank at that time. In addition, the plan was to rob all the tellers in the bank so as to acquire the most money. Braxton-Davis's testimony about the plan is consistent with the way the robbery was executed. Jeanie Drake's testimony also identified Hester and Davenport as having cased the bank before the robbery and as having been near the bank at the time of the robbery. Finally, the FBI agent also testified that in response to questions about the third robbery, Hester told him "We didn't hurt anybody." This is virtually an admission to participation in the third robbery. Based on the testimony of these witnesses, the evidence was sufficient for a rational jury to find Hester and Davenport guilty of the third bank robbery.
 
 
 20
 Second or subsequent conviction.
 
 
 21
 Title 18 U.S.C. Sec. 924 provides in pertinent part as follows:
 
 
 22
 Whoever, during an in relation to any crime of violence ... uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence ... be sentenced to imprisonment for five years.... In the case of his second or subsequent conviction under this subsection, such person shall be sentenced to imprisonment for twenty years.... Notwithstanding any other provision of law, the court shall not place on probation or suspend the sentence of any person convicted of a violation of this subsection, nor shall the term of imprisonment imposed under this subsection run concurrently with any other term of imprisonment including that imposed for the crime of violence....
 
 
 23
 18 U.S.C. Sec. 924(c)(1). The armed bank robberies at issue in this case were crimes of violence. See 18 U.S.C. Sec. 924(c)(3).
 
 
 24
 The United States Supreme Court has recently defined the phrase "second or subsequent conviction" as used in Sec. 924(c). Deal v. United States, 113 S.Ct. 1993 (1993). The Court held that multiple findings of guilt as to crimes of violence, even if charged in a single proceeding, can amount to the necessary "second or subsequent conviction" under Sec. 924(c). In light of this holding, the district court's sentence of Hester and Davenport to five years for carrying and using a firearm in relation to the first bank robbery, and to two consecutive terms of twenty years for the second and third bank robberies, was correct.
 
 CONCLUSION
 
 25
 For the reasons stated above, the convictions and sentences of Hester and Davenport are AFFIRMED.
 
 
 
 *
 Honorable Wendell A. Miles, Senior United States District Judge for the Western District of Michigan, sitting by designation
 
 
 [1]
 This story was apparently fabricated by the agent in an attempt to elicit an incriminating statement