*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2001 FED App. 0257P (6th Cir.)
File Name:  01a0257p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

————————————

HICKSON CORPORATION,
*Plaintiff/*
*Counterdefendant-Appellant,*

*v.*

NORFOLK SOUTHERN
RAILWAY COMPANY,
*Defendant/Counterclaimant*
*and Third-Party*
*Plaintiff-Appellee,*

UNION TANK CAR COMPANY,
*Third-Party*
*Defendant-Appellant,*

FERGUSON HARBOUR, INC.,
*Third-Party*
*Defendant-Appellee.*

No. 99-6079

Appeal from the United States District Court
for the Eastern District of Tennessee at Chattanooga.
No. 95-00266—Curtis L. Collier, District Judge.

Argued:  December 7, 2000

1

Decided and Filed:  August 3, 2001

Before:  MERRITT, KENNEDY, and GILMAN, Circuit
Judges.

_____

**COUNSEL**

**ARGUED:**  Stephen E. O'Day, SMITH, GAMBRELL &
RUSSELL, Atlanta, Georgia, for Hickson Corporation.
William M. Foster, FOSTER, FOSTER, ALLEN &
DURRENCE, Chattanooga, Tennessee, for Norfolk Southern
Railway Company.  Jennifer P. Keller, BAKER,
DONELSON, BEARMAN & CALDWELL, Johnson City,
Tennessee, for Ferguson Harbour.  **ON BRIEF:** Stephen E.
O'Day, Andrew M. Thompson, SMITH, GAMBRELL &
RUSSELL, Atlanta, Georgia, for Hickson Corporation.
William M. Foster, FOSTER, FOSTER, ALLEN &
DURRENCE, Chattanooga, Tennessee, William B. Poff,
WOODS, ROGERS & HAZLEGROVE, Roanoke, Virginia,
Michael J. Quinan, WOODS, ROGERS & HAZLEGROVE,
Richmond, Virginia, for Norfolk Southern Railway Company.
Jennifer P. Keller, Ronald S. Range, Jr., BAKER,
DONELSON, BEARMAN & CALDWELL, Johnson City,
Tennessee, for Ferguson Harbour.  Michael K. Alston, Paul
R. Leitner, HUSCH & EPPENBERGER, Chattanooga,
Tennessee, for Union Tank Car Company.

_____

**OPINION**

_____

MERRITT, Circuit Judge.  This is a diversity case[1]
involving multiple parties that arose after an arsenic spill from

---

[1]There was one federal claim stated in Hickson Corporation's
original complaint, but it is not at issue in this appeal.

a railroad tank car in a Chattanooga rail yard. After a lengthy trial, the jury found Hickson Corporation, the owner of the arsenic being transported, liable to Norfolk Southern Railway Company, the rail carrier transporting the arsenic when it leaked, and awarded damages to Norfolk Southern. This appeal focuses primarily on a damages dispute between Hickson and Norfolk Southern. Hickson claims that the district court's judgment awarding $6,725,000 in contract damages and an additional $1,120,000 in negligence damages to Norfolk Southern is in error because Norfolk Southern did not prove any contract damages separate from negligence damages. In essence, Hickson contends that the damages arise from the same injury, and Norfolk Southern received an impermissible double recovery. Specifically, Hickson contends that the wording of the verdict form and the subsequent interpretation of the jury's answers to the special interrogatories on that verdict form by the district court caused Norfolk Southern to be awarded duplicative damages. We see this, at bottom, as an election of remedies problem, caused, or at least exacerbated by, a confusing verdict form. Although Norfolk Southern was entitled to put forth alternative theories of liability, it is clear that there was only one injury to Norfolk Southern arising from the leak. Allowing Norfolk Southern to recover both contract and negligence damages for the same injury gave Norfolk Southern an impermissible double recovery. After the jury found Hickson liable to Norfolk Southern under both the contract and negligence theories, the district court should have required Norfolk Southern to elect between contract and negligence damages. We therefore remand the case for a retrial on damages only.

## I.

The facts of this case are generally undisputed. We will relate them briefly here and add additional information when necessary. Hickson manufactures wood preservatives in its Conley, Georgia plant and ships arsenic to another plant in Valparaiso, Indiana, as part of its normal business practice.

Hickson signed a long-term lease with Union Tank Car Company for the use of tank cars to assist it in transporting arsenic acid from one plant to another. The leaky tank car at issue was manufactured in 1966 by Union Tank Car and transported caustic acid for some time prior to Hickson leasing the tank car from Union Tank Car in 1989. Prior to the start of Hickson's lease, Union Tank Car inspected the car for corrosion and performed some repairs. One of the repairs was to replace the eduction pipe -- the pipe that extracts liquid contents from the tank car. The pipe extends to just short of the bottom of the tank car and into the sump, or lowest, area of the car.

On June 1, 1994, prior to loading the tank car with arsenic acid, a Hickson employee inspected the tank car for its journey to Indiana. In violation of federal rules and regulations, the inspection did not include the sump area of the car because that area was covered with a pool of liquid. Despite this lack of required inspection, Hickson loaded the acid onto the car and certified to Norfolk Southern on the bill of lading that the acid was in proper condition and was properly "packaged" for transportation in accordance with Department of Transportation rules and regulations. Norfolk Southern took possession of the tank car and transported the arsenic acid to deButts Yard in Chattanooga on June 4 and 5, 1994.

In the early morning hours of June 6, while the car was still at the Chattanooga rail yard, a leak was discovered. No measures were taken by Norfolk Southern at that time to stop the leak. Several hours later, Norfolk Southern employees moved the still-leaking tank car to the edge of the railyard so that emergency equipment could reach it. Norfolk Southern employees notified the Tennessee Department of Environment and Conservation, the Chattanooga Fire Department, the water company, Ferguson Harbour Incorporated (Norfolk Southern's emergency response contractor), and Hickson. The Fire Department sent a hazardous materials team to the site. The car continued to

together to determine whether they presented the issues to the jury in a clear and fair manner.

Applying the procedure set out in *Concrete Spaces* to the verdict form used in this case demonstrates that although the form asked the jury if Norfolk Southern had proved its contract claim against Hickson, it then failed to ask the jury what the specific damages were for that claim. The trial court should have submitted to the jury a question requiring the jury to state specifically the amount, if any, of contract damages, including any mitigation of those damages arising from the conduct of Norfolk Southern and the other entities. The verdict form, along with the jury instructions, should make clear to the jury that any damages awarded on a claim must be supported by evidence relating to that claim and damages for one claim may not be duplicative of damages awarded in another claim. The jury should be told that Hickson may not recover twice for the same injury under alternate theories of liability. If the jury awards damages on more than one claim, it is incumbent on the trial judge to ensure that the awards are not duplicative or overlapping. If any damages awarded are duplicative, the district court must direct Norfolk Southern to elect between the awards.

Accordingly, the portion of the judgment awarding damages is reversed and remanded for a new trial on damages only. The judgment on liability is affirmed.

jury to award damages under each separate theory for which it finds proof of liability.  *Id.*   The jury indicated on the verdict form that it found liability under both Norfolk Southern's contract and negligence theories and there is evidence in the record that would support either theory.  The problem arose because the verdict form presented to the jury did not allow it to indicate specifically what, if any, contract damages were proven separate from the negligence damages.

The Tennessee Supreme Court set out procedures in *Concrete Spaces* for electing a remedy when the plaintiff pursues relief under more than one theory of recovery.  As the Court pointed out in that opinion, the risk that a jury will become confused is of greater concern when the jury is asked to return a general verdict but there are multiple theories under which the jury might find liability and resulting damages.  The Court stated: "Both to preserve the jury's findings and to facilitate the plaintiff's ability to elect damages, it is *essential* that the jury's liability determinations reflect the underlying claims upon which they are based."  *Concrete Spaces*, 2 S.W.3d at 910.  (Emphasis added.)  It went on to state that there can be no "catch-all" standards or blanket rules, but instead the trial court must use "general, common-sense principles" in preparing jury instructions and special verdict forms for cases involving multiple theories of liability or seeking various types of damages.  First, the trial court should provide separate jury instructions for each of theory of liability that clearly explains the elements of each claim.  *Id.*  Then, in a case with multiple claims, such as the ones here, the jury should also use a general verdict form accompanied by special interrogatories or a special verdict form.  *Id.*  Tennessee Rule of Civil Procedure 49 accords trial courts great latitude in using special verdict forms and tailoring special interrogatories to meet the needs of each unique case.  Generally, the verdict form should repeat and highlight the issues covered in the jury charge and should be couched in the same terms as the jury instructions.  The instructions and the verdict form should be considered

leak until a Hickson employee arrived on the scene some 10-15 hours after discovery of the leak and arranged for the leaking acid to be drained into a children's plastic pool and pumped back into the car.  Before the leak was contained, approximately 1/4 of the acid was lost, causing contamination to the soil in two places at the railyard and threatening the Chattanooga water supply, although extensive leakage into the water system was averted.

After the spill, Hickson, as the owner of the arsenic being transported, brought an action against Norfolk Southern under the Carmack Amendment to the Interstate Commerce Act, a federal statute allowing recovery against an interstate rail carrier by the owner of property damaged by the interstate rail carrier during transit.  49 U.S.C. § 11706.  Hickson claimed, among other things, that Norfolk Southern caused the leak by joining rail cars together at an excessive rate of speed.  Norfolk Southern counterclaimed against Hickson, alleging breach of contract, negligence, nuisance, trespass and ultrahazardous activity based on Hickson's failure adequately to inspect the tank car before loading the arsenic onto the tank car and for misrepresenting to Norfolk Southern, through the bill of lading, that the tank car had been properly inspected and was fit to transport arsenic.  Norfolk Southern also filed a third-party complaint against Union Tank Car, the manufacturer and owner of the tank car that leaked, claiming breach of contract, negligence, nuisance, trespass and ultrahazardous activity.  Norfolk Southern alleged that Union Tank Car had installed the eduction pipe incorrectly, causing it to strike the sump of the tank car, wear through the tank car's protective lining and thereby allow the acid to corrode the tank car's steel.  In turn, Union Tank Car filed a third-party complaint against Hickson for negligence and Hickson counterclaimed against Union Tank Car for various products liability claims, other negligence claims, breach of contract and contribution or indemnity.  The district court granted partial summary judgment to Union Tank Car, dismissing Norfolk Southern's claims against Union Tank Car for breach of contract, trespass, and nuisance.  Union Tank Car and

Hickson settled their claims against each other following jury selection. Numerous other third-party complaints and counterclaims were filed based on this incident.[2]

After the district court ruled on various dispositive motions, the following issues were tried to a jury:

(1) Hickson's Carmack Amendment claim against Norfolk Southern for damage to property being transported interstate by rail;

(2) Norfolk Southern's claims against Hickson for breach of contract, negligence, nuisance and trespass arising from the alleged failure adequately to inspect the tank car and for misrepresentations about the inspection and condition of the tank car put forth in the bill of lading;

(3) Norfolk Southern's claim against Union Tank Car for negligence in installing the eduction pipe.

All parties moved for judgment as a matter of law at the close of the evidence. The district court granted judgment as a matter of law to Hickson on Norfolk Southern's ultrahazardous activity claim and denied all other motions. The jury found Hickson liable to Norfolk Southern for breach of contract and negligence and found Union Tank Car liable

---

[2]Norfolk Southern also filed third-party complaints against (1) the City of Chattanooga for negligence in its clean up response, (2) Wisconsin Protective Coatings, the manufacturer of the protective lining in the leaking tank car, and (3) Trinity Industries, Inc., the applicator of the liner material to the leaking tank car. Hickson then brought a third-party complaint against Ferguson Harbour, Inc., Norfolk Southern's emergency response team for spills, for contribution based on Ferguson Harbour's negligence in its clean-up response. Prior to trial, the district court dismissed Hickson's claim for contribution against Ferguson Harbour because under Tennessee's comparative fault statute in negligence cases there can be no claims of contribution. Norfolk Southern settled its claims with the City of Chattanooga, Trinity Industries and Wisconsin Protective Coatings.

entitled to only one recovery)). Regardless of the nature or number of legal theories advanced by a party, it is not entitled to more than a single recovery for each distinct item of compensable damage supported by the evidence.

Our review of the claims brought by Norfolk Southern and the evidence presented indicate that Norfolk Southern suffered only one injury as a result of the leak and it cannot collect a double recovery for actual damages that are coextensive under the contract and tort claims. Norfolk Southern premised both its contract and tort damages on its cost to cleanup the spill. It does not appear that the district court reviewed the evidence to determine whether each claim was based on a separable item of compensable damage so as to justify aggregating them in computing the total amount of damages. It did not examine whether any portion of the $6,725,000 contract damages, arrived at through the mathematical calculations of the district court instead of through a direct question to the jury, and the $4,000,000 in negligence damages specifically awarded by the jury to Norfolk Southern, overlap or duplicate each other. Even though there may be more than one legal reason why Hickson is liable to Norfolk Southern, under the evidence we cannot see where Norfolk Southern was harmed in a way that caused more than one distinct injury – the cost of cleaning up the spill.

### Adequacy of the Verdict Form

The double recovery problem was exacerbated by a verdict form that did not allow the jury to award specific damage amounts for each claim. The order and form of the questions on the verdict form left the district court unable to determine what the jury intended in its award of damages. *Concrete Spaces* addresses, among other things, the necessity that the verdict form properly separate the causes of action and corresponding damages to avoid the complications that might otherwise result from a general finding of damages. *Concrete Spaces*, 2 S.W.3d at 910. The verdict form must allow the

contract with Norfolk Southern, the form did not permit the jury to award a damage amount for that claim. The resulting confusion about what the jury intended requires us to remand the case and order a new trial on damages.

Because this case is based on our diversity jurisdiction, we decide the question under Tennessee law. The Tennessee Supreme Court opinion, *Concrete Spaces, Inc. v. Sender*, 2 S.W.3d 901 (Tenn. 1999), decided after the trial in this case, provides guidance to our review. As stated in *Concrete Spaces*, the Tennessee Rules of Civil Procedure allow a plaintiff simultaneously to pursue a variety of legal theories against a defendant so long as the plaintiff is not awarded a double recovery. If the damage award results in a duplicative recovery, the court may then direct the plaintiff to elect a remedy. *Id.* at 910-11; *see also* Steven W. Feldman, *Election of Remedies in Tennessee: Making the Right Choices*, 37 Tenn. Bar J. 14 (Jan. 2001) (discussing *Concrete Spaces*). Here, the confusing verdict form, combined with the district court's interpretation of the jury's answers on the form, allowed the possibility of a double recovery by Norfolk Southern, necessitating a new trial on damages under the holding in *Concrete Spaces*.

### Double Recovery and Election of Remedies

Election of remedies is "the legal version of the idea that a plaintiff may not have his cake and eat it too." D. Dobbs, Remedies § 1.5 at 14 (1973). The doctrine is remedial in nature and does no more than prevent double recovery. *Id.* at 16. Although the doctrine has been interpreted many ways, what it means in this case is that Norfolk Southern is entitled to the greatest amount recoverable under any single theory pled that is supported by the evidence. It is well settled under Tennessee law that a party cannot be compensated for the same injury twice. *Shahrdar v. Global Housing, Inc.*, 983 S.W.2d 230, 238 (Tenn. Ct. App. 1998) (citing *Allied Sound, Inc. v. Neely*, 909 S.W.2d 815, 821 (Tenn. Ct. App. 1995) (if damages under different legal theories overlap, plaintiff

to Norfolk Southern for negligence. The jury also found that Norfolk Southern was not negligent with respect to Hickson's claim that it caused the leak by coupling the cars together too fast, but it did find that Norfolk Southern was negligent in its response to the spill once discovered, thereby increasing the harm done by the spill.

After determining liability, the verdict form asked the jury to determine damages. After discussion among the parties and the court, the jury was presented with a single damage question in Question 8 of the verdict form that read as follows: "What is the total amount that Norfolk Southern incurred in damages pursuant to the claims you found Norfolk Southern had proved by a preponderance of the evidence?" The jury responded that Norfolk Southern had incurred damages in the amount of $10,725,000. Question 18 asked the jury, in accordance with Tennessee's comparative fault law, to allocate the fault among various entities, but it did not instruct or tell the jury that it was apportioning only negligence damages: "(18)  Using one hundred percent (100%) as the total combined fault, what percentage of the total, as proved by a preponderance of the evidence, should be allocated to each entity?" The jury apportioned fault among various parties and nonparties as follows: Hickson – 28%, Union Tank Car -- 15%, Norfolk Southern -- 35%, Trinity Industries – 10%, Wisconsin Protective Coatings – 0%, City of Chattanooga – 5%, Ferguson Harbour – 5% and Kloppers (Kloppers leased the tank car in question to transport arsenic acid before Hickson took over the lease). Then, in Question 19, the verdict form specifically asked the jury to find the negligence damages incurred by Norfolk Southern: "Out of the total amount of damages you listed in Question (8) and without considering the percentage of fault in Question (18), what was the amount of damage sustained by Norfolk Southern pursuant to its negligence claim?" In answer to this question, the jury specifically found $4 million in negligence damages. The judge then allocated the $4 million in negligence damages in accordance with the percentages given in Question 18.

Although the verdict form asked the jury for a "total" damages award and also specifically asked the jury to award damages on the negligence claim, it did not ask for a specific damage award on the breach of contract claim. Because the jury found liability under the contract claim, the district court had to deduce the amount of contract damages, if any, based on the jury's answers to the other interrogatories. The trial court arrived at contract damages in the amount of $6.725 million by taking the total amount of damages found by the jury in Question 8 ($10,725,000) and subtracting the amount of negligence damages found by the jury ($4,000,000) to arrive at the contract damages amount ($6,725,000). The district court calculated Hickson's total damage payment to Norfolk Southern by adding the contract damage award of $6.725 million to Hickson's portion of the negligence damages ($1.120 million), for total damages of $7.845 million to be paid by Hickson to Norfolk Southern.

The primary issue raised on appeal is whether the jury intended for Hickson to pay $6.725 million in contract damages to Norfolk Southern in addition to its share of the $4 million in negligence damages apportioned among the various entities. Hickson contends that the jury did not intend to award Norfolk Southern both contract and negligence damages, but the confusing verdict form caused the trial judge to award contract damages where none were intended. Alternatively, Hickson claims that even if the jury did intend to award both contract and negligence damages, the amounts awarded are excessive because they compensate Norfolk Southern twice for the same injury and do not take into account the fact that the jury found Norfolk Southern negligent in its response to the spill. In addition, Hickson also contends that (1) the district court erred in dismissing its contribution claim against Ferguson-Harbour; (2) Norfolk Southern cannot recover because the jury found Norfolk Southern's negligence to be greater than Hickson's or Union Tank Car's and (3) the district court erred in denying Hickson's motion for remittitur. The latter three issues are

moot in light of our decision to remand for a new trial on damages.

## II.

We first address the waiver issue raised by Norfolk Southern. Norfolk Southern contends that Hickson waived any complaints on appeal about the adequacy of the verdict form because Hickson agreed to the form before it was submitted to the jury and Hickson declined to ask the jury to clarify its responses before it was dismissed. The record indicates, however, that Hickson did express some concern about the verdict form before it was given to the jury but it was unable to convince the trial judge to adopt the form it wanted. Hickson and Union Tank Car also challenged the verdict based on objections to the verdict form in post-trial motions. *See*, *e.g.*, Hickson Corporation's Motion for Interpretation of the Jury Verdict, Brief in Support Thereof, and Response in Opposition to the Brief of Norfolk Southern Railway Company with Respect to Entry of Judgment on the Jury Verdict (dated Jan. 19, 1999); Hickson Corporation's Brief in Support of Its Consolidated [Post-trial] Motions (dated Feb. 5, 1999). Furthermore, in addition to questioning the wording of the verdict form, Hickson and Union Tank Car also claim error in the trial judge's interpretation of the verdict form, a legal issue that could not have been raised before the conclusion of the trial. Hickson and Union Tank Car sufficiently raised below the issue of the wording and interpretation of the verdict form, and we therefore find that the issue is properly before us.

## III.

The problem with this case is two-fold: (1) the district court did not examine whether the claims brought by Norfolk Southern were alternative theories based on one injury and whether the resulting damages were duplicative or overlapping and (2) the verdict form was confusing because, despite the fact that the jury found Hickson had breached its