Richard L. JOHNSON,
Plaintiff–Appellee,

v.

Eric HOWARD, Defendant–Appellant.

No. 99–2353.

United States Court of Appeals,
Sixth Circuit.

Dec. 12, 2001.

Before MOORE and NELSON, Circuit Judges; and KATZ, District Judge.*

* The Honorable David A. Katz, United States District Judge for the Northern District of Ohio, sitting by designation.

PER CURIAM.

Defendant Eric Howard appeals the entry of a jury verdict of $330,000 against him and in favor of Plaintiff Richard Johnson in Johnson's prisoner civil rights case. Howard claims that the verdict is duplicative, grossly excessive beyond the bounds of due process, and disproportionate to his ability to pay. He also contends that the jury was influenced by passion and prejudice and by the bias and improper conduct of the trial judge. For the reasons stated below, we AFFIRM the judgment of the district court.

## I. Facts

Plaintiff–Appellee Richard Johnson, an African–American male, is a state prisoner in the Ionia Maximum Correctional Facility (IMAX) in Ionia, Michigan. He claims that on August 15, 1995, he was being transferred between cells in the facility when he was severely beaten without provocation by Defendant–Appellant Eric Howard, who at that time was an IMAX corrections officer.

On August 16, 1996, Johnson filed a complaint against Howard in the United States District Court for the Western District of Michigan.[1] The complaint contained, among other claims, allegations that Howard had committed state law assault and battery and had violated Johnson's rights to be free from excessive force under the Eighth Amendment and to equal protection under the Fourteenth Amendment.[2]

At trial, Howard rested following the conclusion of Johnson's case. On October 8, 1999, a jury returned a verdict of $15,000 in compensatory damages for assault and battery, $15,000 in compensatory damages on the Eighth Amendment claim, and $300,000 in punitive damages on the Eighth Amendment claim. The jury returned a verdict of "no cause of action" on Johnson's Fourteenth Amendment claim. Howard filed a motion for a new trial or, in the alternative, to amend the judgment. He argued that the punitive damages award violated his rights under due process, that remittitur of some portion of the verdict was appropriate, and that judicial errors prejudiced the jury and mandated a new trial. The trial court denied Howard's motion.

Howard filed this appeal. He maintains that the jury improperly awarded Johnson a double recovery, that the $300,000 punitive damages award was grossly excessive and outside the bounds of due process, and that the conduct of the district judge during trial biased the jury and influenced the verdict.

## II. Discussion

### A. Double Recovery

■ Howard argues that the $15,000 awarded for Johnson's assault and battery claims and the $15,000 awarded for the excessive force claim constitute a double recovery for the same harm. He suggests that Johnson's compensatory damages award should therefore be reduced to a total of $15,000. Howard's argument is not well-taken.

■ A party is not entitled to recover twice for the same loss, even if the party would otherwise be able to recover for that loss under separate theories of liability. *See, e.g., General Tel. Co. v. EEOC,* 446 U.S. 318, 333, 100 S.Ct. 1698, 1708, 64

---

1. The complaint named a number of other defendants not parties to and not relevant to this appeal.

2. Johnson claimed that the beating was racially motivated. His constitutional claims were brought pursuant to 42 U.S.C. § 1983.

L.Ed.2d 319 (1980) (discussing double recovery in Title VII context); *Braley v. City of Pontiac*, 906 F.2d 220, 224 (6th Cir.1990); 22 Am.Jur.2d *Damages* § 35 (1988). Although a double recovery may not be had, the jury is not prohibited from allocating a total damages award between different theories of recovery. *See Gentile v. County of Suffolk*, 926 F.2d 142, 154 (2d Cir.1991).

Howard did not object to either the verdict form or jury instructions with respect to their susceptibility to a double recovery. In fact, the trial court indicated in its decision denying Howard's motion for a new trial that the verdict form and instructions had been proposed by the parties themselves. (Apx. at 96). Because Howard failed to raise any objection during trial, the decision of the trial court is subject to review for "plain error." *See Reynolds v. Green*, 184 F.3d 589, 594 (6th Cir. 1999). "Plain error is an 'obvious and prejudicial' error that requires action by the reviewing court 'in the interests of justice.'" *Id.*

■ Where there is some question as to the validity of a jury verdict, "it is incumbent upon a trial court, as well as an appellate court, 'to reconcile the answers if possible under any view of the evidence in the case.'" *Waggoner v. Mosti*, 792 F.2d 595, 597 (6th Cir.1986) (quoting *Sylvestri v. Warner & Swasey Co.*, 398 F.2d 598, 603 (2d Cir.1968)). Furthermore, "'the consistency of the jury verdicts must be considered in light of the judge's instructions to the jury.'" *Waggoner*, 792 F.2d at 597 (quoting *Bates v. Jean*, 745 F.2d 1146, 1151 (7th Cir.1984)).

Johnson suggests that the jury's verdict may be construed to eliminate the possibility of double recovery if one assumes that the jury determined that he suffered a total of $30,000 in compensable damages and merely divided that amount between his viable two causes of action. That Johnson's reading of the verdict is an acceptable one is further buttressed by the following colloquy between the trial judge and the jury:

> The Court: By that $15,000 [for the assault and battery claim] did you mean to repeat the $15,000 you awarded under the Eighth Amendment claim or did you mean it to be a separate award?
>
> Foreperson: I believe it was separate.
>
> The Court: Is that your agreement?
>
> Jury Panel: Yes.
>
> The Court: It was separate. Is that true, all of you?
>
> Jury Panel: Yes.

(Apx. at 651).

A conclusion identical to that proposed by Johnson has been reached by the Court of Appeals for the Second Circuit. In *Gentile v. County of Suffolk*, 926 F.2d 142 (2d Cir.1991), the Second Circuit held that a $150,000 award divided evenly between state and federal causes of action for malicious prosecution did not constitute a double recovery:

> Defendants argue that the fact that the jury divided their award for each plaintiff into two equal parts—$75,000 on the state law cause of action and $75,000 on the federal cause of action— indicates that the jury impermissibly compensated each plaintiff twice for identical injuries. But it is equally conceivable that the jury found that each plaintiff suffered $150,000 worth of discrete, unduplicated injuries as a result of the County's violations of law, and merely split the total amount equally between the state and federal causes of action in announcing their award to the court on the form submitted to it. This supposition is supported by the jury's insistence, in response to the court's appro-

priate polling after the verdict, that the jury did intend to award a total of $150,000 to each plaintiff and that the damages awarded under state law and federal law were "independent."

Duplication of recovery occurs "by compensating a single injury under two different names," *Hysell v. Iowa Public Serv. Co.*, 559 F.2d 468, 473 (8th Cir. 1977). However, defendants do not demonstrate that a jury's award is duplicative merely by noting that it allocated the damages under two different causes of action. It is, of course, possible that the jury committed the error of duplicating damages here, but defendants have failed to establish this allegation with any degree of certainty.

*Id.* at 153–54.

Howard has failed to demonstrate that the verdict form and jury instructions were plainly erroneous. Furthermore, although such a reading is admittedly strained, one can construe the verdict as representative of a finding by the jury that Johnson was entitled to a total of $30,000 in compensable damages due to the beating that they found he had received. The verdict will not be reduced as a double recovery.

### B. Remittitur of the Punitive Damages Award

■ The jury awarded Johnson $300,000 in punitive damages based on violation of his right to be free from excessive force. Howard argues that this award is grossly excessive and outside the bounds permitted by due process, was influenced by bias and prejudice, and is large well beyond his ability to pay.

#### 1. *BMW v. Gore*

■ "Grossly excessive" damages awards are prohibited by the Due Process Clause of the Fourteenth and Fifth Amendments. *See BMW of North Alabama v. Gore*, 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996). Determination of whether an award is "grossly excessive" requires analysis of three factors: (1) reprehensibility of the wrongful conduct, (2) disparity between harm or potential harm and the amount of the award, and (3) comparison of the punitive award with other penalties imposed in similar cases. *Id.* at 575, 116 S.Ct. at 1598–99. Review of the district court's determination of the constitutionality of a punitive damages award is *de novo*. *See Cooper Indus., Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 121 S.Ct. 1678, 1685–86, 149 L.Ed.2d 674 (2001); *E.E.O.C. v. Harbert–Yeargin, Inc.*, 266 F.3d 498, 514 (6th Cir.2001).

An important factor in the determination of the reprehensibility is whether violence was involved in the wrongful conduct. *See BMW*, 517 U.S. at 576, 116 S.Ct. at 1599. At trial, Johnson presented uncontroverted evidence tending to show that he was savagely beaten while his hands were secured behind his back; moreover, this beating was administered by someone in a position of authority. Howard's conduct exhibits a high degree of reprehensibility.

The disparity between harm suffered and punitive damages awarded is not beyond the pale. The jury found that Johnson suffered $30,000 in compensable damages, which means that the ratio of punitive to actual damages was ten to one. Even that ratio is inaccurate when one considers the constitutionally permissible amount of punitive damages, because Johnson presented evidence showing that Howard did not stop beating him until his supervisor approached; the jury might easily have believed that the potential damages were much larger than $30,000. (Apx. at 349). The ratio of punitive damages to compensable and po-

tential damages could therefore be even lower than an already reasonable ratio of ten to one.

When examining the final *BMW* factor, the extent of sanctions imposed for similar misconduct, this court may look both to other statutory penalties, *see BMW*, 517 U.S. at 584–85, 116 S.Ct. at 1603, and to the amount of the punitive award necessary to deter similar misconduct in the future. *See id.* As the trial court noted in its opinion, Michigan's criminal penalties for conduct similar to Howard's ranges from ninety days of incarceration and a small fine to imprisonment for up to ten years and a fine of $5,000. *See* M.P.C. § 750.81. Furthermore, given the nature of Howard's misconduct, $300,000 does not seem to be an inappropriately large deterrent amount.

Howard has failed to demonstrate that the punitive damages award against him is unconstitutionally large. The award will not be reduced on due process grounds.

### 2. Passion and Prejudice

■ Howard claims that Plaintiff's counsel improperly appealed to bias, emotion, passion, and prejudice in his closing statement:

> I pray that we have not turned the clock back 200 years where the white slave owner could beat the negro slave as an outlet for frustration to assert his dominance and to perpetuate oppression. Fortunately ... we have a Constitution which to some of us is dear to our hearts. It's up to you, ladies and gentlemen, to enforce the Constitution and its provisions in this case.
>
> ...
>
> I would ask each and every one of you to put yourself in [the Plaintiff's] shoes and imagine just, if you can, somehow the helplessness of being attacked while your hands are cuffed behind your back

> in a cell out of the clear blue ... for no other reason than the color of your skin....
>
> ...
>
> If you didn't like what you heard, what you saw, and you are incensed, like I'm incensed, then now is the time and this is the mechanism provided for by our law to send a clear message.

(Appx. at 614–21).

Because Howard raised no objection to Johnson's closing argument at trial, admission of the statements made therein is subject to the "plain error" standard of review. "Plain error is an 'obvious and prejudicial' error that requires action by the reviewing court 'in the interests of justice.'" *Reynolds v. Green,* 184 F.3d 589, 594 (6th Cir.1999).

The suggestion that the jurors place themselves in Johnson's shoes is a "Golden Rule" argument. *See Spray–Rite Serv. Corp. v. Monsanto Co.,* 684 F.2d 1226, 1246 (7th Cir.1982), *quoted in Woods v. Beavers,* 1991 WL 311, No. 90–3338, at *5 (6th Cir. Jan. 3, 1991) (unpublished disposition). Those circuits that have considered use of "Golden Rule" arguments have "universally condemned" them as improper because they invite decision based on bias and prejudice rather than consideration of facts. *See Lovett v. Union Pacific R.R. Co.,* 201 F.3d 1074, 1083 (8th Cir. 2000); *see also Edwards v. City of Philadelphia,* 860 F.2d 568, 574 (3d Cir.1988); *Spray–Rite,* 684 F.2d at 1246.

Johnson's "Golden Rule" argument was clearly obvious; however, we are not convinced that it was so prejudicial that a new trial or a modification of the verdict is warranted.

■ Howard also argues that he was prejudiced because the district court and Johnson's counsel referred to Howard's

counsel as the "lawyer for the State of Michigan" and as the "Attorney General;" furthermore, some of Howard's exhibits were referred to as the "government's exhibits." Howard claims that such references were made to allow the jury to infer that a "deep pocket" existed against which Johnson could recover.[3]

Howard objected to the government references, and the objection was sustained. (Apx. at 388–89). Following the objection, the trial court issued the following instruction to the jury:

> The two defendants are sued privately and they are being represented by a man who introduced himself to you as Associate Attorney General, that was how he introduced himself so we will assume that he is, but that doesn't make him the Government lawyer. There is no Government on trial.

(Apx. at 389).

Howard has identified only one questionable statement made subsequent to his objection, and his objection was not renewed when that statement was made. (Apx. at 518). Any prejudice that resulted from the improper statements was remedied by the instruction given by the trial court. There is no error.

### 3. Inability to Pay

Howard argues that the punitive damages award should be reduced because the jury failed to consider his ability to pay a large award. Howard did not present testimony about his financial means, did not mention it in his closing argument, and did not object to its omission from the jury instructions. Instead, he now claims that it was Johnson's burden to present evidence of Howard's ability to pay a punitive award.

The majority of our fellow circuit courts to address the issue have held that it is the defendant's burden to present evidence of his ability to pay when he would like that information to be considered by the jury. See Provost v. City of Newburgh, 262 F.3d 146 (2d Cir.2001); Bennis v. Gable, 823 F.2d 723, 734 n. 14 (3d Cir.1987) (dicta); Fishman v. Clancy, 763 F.2d 485 (1st Cir.1985); Woods–Drake v. Lundy, 667 F.2d 1198 (5th Cir.1982); Tri–Tron International v. Velto, 525 F.2d 432 (9th Cir.1975); but see Bankers Life & Casualty Co. v. Kirtley, 307 F.2d 418 (8th Cir.1962) (holding that insufficient evidence of defendant's worth had been presented to allow large punitive award). We agree. Howard chose not to present evidence of his inability to pay a large punitive award, so he may not now be heard to complain that the jury did not consider such evidence.

### 4. Remittitur

Finally, Howard claims that the trial court erred when it denied his motion for remittitur. Denial of a motion for remittitur is reviewed for abuse of discretion. See In re Lewis, 845 F.2d 624, 635 (6th Cir.1988). "Where a jury grants a particular damage award and the district court refuses to disturb that finding, an appellate court should be certain indeed that the award is contrary to all reason before it orders a remittitur or a new trial." Id. As we have rejected all of Howard's arguments for remittitur, we find no abuse of discretion by the trial court.

### C. Allegations of Judicial Bias

Howard claims that the trial court demonstrated bias that improperly influenced

---

**3.** Howard's argument that such references violate Federal Rule of Evidence 411, which prohibits admission of evidence of liability insurance, is without merit. There is no indi- cation that the jury was ever informed of any possibility of indemnification of Howard by the State of Michigan.

the jury. "Although there is no mechanical test for determining when bias and/or hostility exists, when a trial judge exhibits ... open hostility and bias ... it follows that the judgment entered therein must be reversed." *Anderson v. Sheppard*, 856 F.2d 741, 747 (6th Cir.1988).

Included in Howard's allegations of bias are a number of claims that are more appropriately characterized as objections to evidentiary rulings. "Abuse of discretion" is the proper standard of review for challenged evidentiary rulings. *See United States v. Taplin*, 954 F.2d 1256, 1258 (6th Cir.1992); *United States v. Middleton*, 246 F.3d 825, 839 (6th Cir.2001). Abuse of discretion will be found when the district court improperly applies the law or uses an erroneous legal standard. *See Taplin* at 1258. Howard's contentions are discussed below.

1. Reference to Howard's attorney as the "government attorney"

■ Howard claims that bias was demonstrated through continued references to his attorney as a government attorney. This argument was rejected *supra* Section B(2).

2. Thirteenth and Fourteenth Amendments, the Civil War, and School Desegregation

■ In his initial description of the case to prospective jurors, the trial judge briefly discussed the history of the Thirteenth and Fourteenth Amendments and their relationship to slavery, the Civil War, and school desegregation. (Apx. at 191–192). Howard argues that this discussion was inappropriate in light of Johnson's

pending Equal Protection claim. To the contrary, the trial judge's exposition was well within his power to conduct the trial, and no bias is evidenced in the statements.[4]

3. Exclusion of Johnson's Criminal Convictions

■ Evidence of Johnson's criminal convictions was excluded by motion in limine granted on October 5, 1999. (Apx. at 81). During voir dire, the court stated, "Plaintiff is in prison, we don't know why and we don't care why, he is a legal inmate in the corrections system of the State of Michigan." (Apx. at 197). This statement does not indicate any bias by the court.

4. "Sarcastic remarks" during voir dire

■ Howard complains that the trial judge made inappropriate comments to prospective jurors concerning the reduction in the number of patients at the Kalamazoo Psychiatric Hospital, and referred to the patients there as "inmates" in an improper attempt to bias the jury. (Apx. at 205). We fail to find any bias in these statements.

5. Exclusion of Witness Convictions

At trial, the court granted Johnson's verbal motion to exclude the felony convictions of four of his intended witnesses. (Apx. at 248–50). In deciding the motion, the judge stated that he saw "no probative value at all" to the convictions, then stated that "the prejudice doesn't outweigh the probative value, so the defendant will not cross-examine witnesses on armed robbery, CSC, and attempted murder." (Apx. at 256).[5]

■ With respect to the admission of past convictions for impeachment, Federal

---

4. Furthermore, as Johnson points out in his brief, the jury returned a verdict of "no cause

of action" on his Fourteenth Amendment claims.

5. The judge's statement that "the prejudice

Rule of Evidence 609(a)(1) states, in pertinent part, that "evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403 . . . ." FRE 403 provides, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." Given the trial court's statement that its decision was based on the failure of the potential for prejudice to outweigh the probative value of the convictions, Howard claims that the trial court's ruling should be reversed because it applied an improper evidentiary standard.

The trial court is granted broad discretion when deciding whether to exclude evidence pursuant to Rule 403. *See United States v. Vance,* 871 F.2d 572, 576 (6th Cir.1989). Where, as here, the district court improperly applies the law or uses an erroneous legal standard, there is an abuse of discretion. *See United States v. Taplin,* 954 F.2d 1256, 1258 (6th Cir.1992); *United States v. Middleton,* 246 F.3d 825, 839 (6th Cir.2001). However, this court should ignore any error caused by the abuse of discretion if it is a harmless error. *See United States v. Lloyd,* 10 F.3d 1197, 1216 (6th Cir.1993).

Although the trial court applied the incorrect standard when determining the ultimate admissibility of the convictions, Howard has given this court no reason to overturn the trial court's initial evaluation of the convictions' lack of probative value. If evidence has no probative value, then it would not be difficult for the probative value to be "substantially outweighed by the danger of unfair prejudice." Even if the trial court had stated the proper standard, we are confident that he would have concluded that evidence of the witnesses'

convictions was inadmissible. The trial court's statement of the improper standard was therefore harmless error.

### 6. Failure to Rule on Motion in Limine

 Howard claims that bias was shown by the trial court's failure to issue a "definitive ruling" on a motion in limine he filed to exclude use of his past misdemeanor convictions during cross-examination. This contention is frivolous. When the court and the parties discussed the motion prior to trial, the judge stated, "My current feeling about that for both of you is that [the misdemeanor convictions] won't be used at cross." (Apx. at 257–58). Moreover, Howard never testified, so there was no need for a clarified ruling, and no bias was shown.

### 7. Winters File

 During the cross-examination of Eric Winters, Howard's counsel asked him to review a large file to determine if Howard had ever written Winters any misconduct tickets. The trial court then informed the jury that they did not need to assume that the entire file consisted of misconduct tickets. (Apx. at 320–21). This curative instruction constitutes neither bias nor error.

### 8. Reference to Johnson's Medical Condition

 Following a reference by Howard's counsel to Johnson's "psychiatric mental condition," the trial court admonished counsel that such references were excluded pending decision on a prior motion in limine. (Apx. at 368). The court also informed the jury that Howard's counsel should not have made such a statement. The court then decided to exclude

---

doesn't outweigh the probative value" does not seem to logically follow his statement that the evidence has "no probative value at all." It appears likely that he merely mis-spoke and

intended to conclude that "the probative value doesn't outweigh the prejudice" before excluding the convictions. Nonetheless, Howard's argument will be given its due.

evidence of the psychiatric condition. Howard does not explain how bias is shown by the trial court's enforcement of its evidentiary rulings, and this court finds none.

### 9. Deposition Commentary

■ Howard claims that the trial judge improperly bolstered Johnson's credibility on cross-examination by informing both Johnson and the jury that the transcript of Johnson's deposition could contain errors and by repeatedly interfering with the cross-examination of Johnson. (Apx. at 403–04, 409, 416, 453–83).

The trial court has broad discretion to comment on the evidence. *See Quercia v. United States,* 289 U.S. 466, 53 S.Ct. 698, 77 L.Ed. 1321 (1933); *Logue v. Dore,* 103 F.3d 1040, 1045 (1st Cir.1997) ("a judge is not a mere umpire"). Review of the portions of the transcript disputed by Howard indicates that the trial judge did not overstep his bounds with respect to allowable commentary in exercising his discretion to maintain an orderly trial.

### 10. Other Officer Testimony

■ During trial, the judge excluded evidence offered to show that Johnson did not sue minority officers who were present at his beating; this evidence was excluded as not relevant to the liability of those corrections officers who were being tried. Howard claims that exclusion of this testimony was an abuse of discretion because it was relevant to Johnson's credibility and to his Fourteenth Amendment claim. We find no abuse of discretion in the trial court's ruling and will not disturb it on appeal.

### 11. Miscellaneous Objections

■ Howard raises a number of other allegations of bias that do not merit individual consideration. For instance, he complains that the trial judge opened a transcript "noisily," and that he "sarcastically, aggressively and improperly question[ed] and examine[d]" a witness to destroy his credibility. Howard also expresses his displeasure that his trial notebook was disturbed when left overnight on the witness stand, and complains that the trial judge improperly called his attorney "incompetent" when he failed to comply with a direct order of the court. These trivial incidents do not amount to a showing of bias, even when taken collectively with Howard's other allegations.

### III. Conclusion

For the foregoing reasons, the judgment of the United States District Court for the Western District of Michigan is AFFIRMED.