NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0145n.06

Case No. 18-5137

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

<table>
<tr><td>AMERICA'S COLLECTIBLES NETWORK, INC., dba Jewelry Television,</td><td>)<br>)<br>)</td><td rowspan="2"></td></tr>
<tr><td>Plaintiff-Appellant,</td><td>)<br>)</td></tr>
</table>

AMERICA'S COLLECTIBLES NETWORK, INC., dba Jewelry Television,    )
    )
    )
    Plaintiff-Appellant,    )
    )
v.    )
    )
STERLING COMMERCE (AMERICA), INC.; INTERNATIONAL BUSINESS MACHINES CORPORATION, successor in interest Sterling Commerce (America), Inc.,    )
    )
    )
    )
    )
    Defendants-Appellees.    )
    )

**FILED**
Mar 26, 2019
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE

Before: MERRITT, GUY, and MOORE, Circuit Judges.

**MERRITT, Circuit Judge.** The major issue in this Tennessee diversity case is whether when the jury entered as damages "$13 million" three separate times on a jury verdict form itemizing three separate overlapping theories of liability, the District Court erred in reading the verdict as a single award of $13 million instead of totaling the three separate awards of the same amount for a total final judgment of $39 million in favor of the plaintiff. We agree with the District Court that the jury must have intended, and the record in the case will justify, only one award of $13 million. We will deal with this issue first and then deal with an issue regarding prejudgment interest on the award.

## I. FACTUAL & PROCEDURAL BACKGROUND

The plaintiff is America's Collectibles Network, Inc., doing business as Jewelry TV. The company is a television and internet retailer of jewelry which uses a computer system in the purchase and sale of its jewelry on TV and maintaining its inventory. The defendant is Sterling Commerce America, Inc., a former subsidiary of International Business Machines Corporation, which is responsible for any judgment in this case. Sterling was in the business of producing and licensing commercial software. More than ten years ago, Jewelry TV hired Sterling to replace and upgrade the software used to operate its computer system. The project failed when Sterling delivered a defective software system.

The theory of the case was that Sterling induced Jewelry TV to select Sterling for an overhaul of Jewelry TV's warehouse and business operations computer software. The Sterling update resulted in software crashes, sorting errors, a slowed purchase order process, mis-payment of vendors, and Internet order malfunctions. Jewelry TV went to trial on theories of fraud in the inducement, promissory fraud, negligent misrepresentation, breach of contract, and breach of express warranties.

The District Court presided over a sixteen-day jury trial in May and June of 2017. The jury instructions included sections on each separate claim or theory. Importantly, Jury Instruction 28 told the jury not to apportion its award among multiple theories. This appeal arises from Instruction 28 which read: "Do not increase or reduce the amount in one answer because of your answer to any other question about damages. Do not speculate about what any party's ultimate recovery may or may not be. Any recovery will be determined by the Court when it applies the law to your answers at the time of judgment." The instruction then asked that the jury make

findings as to whether each theory had been proven and what (if any) damages arose from that specific injury. In a communication to the Court during deliberations, the jury foreman wrote, "We are having trouble interpreting jury instruction 28. Do we add damages together or should [sic] be the same on every line [?]" The District Court simply told the jury to read the instructions and follow them.

The verdict form broke each claim into individual questions relating to whether Jewelry TV had proven the claim, whether Sterling had proven any affirmative defenses, and whether any damages flowed from that specific claim. The jury made the following findings:

➢ On the fraudulent inducement claim, the jury found for Jewelry TV and wrote "$13 million" in the compensatory damages blank.

➢ On the promissory fraud claim, the jury found that Jewelry TV had not proven the required elements.

➢ On the negligent misrepresentation claim, the jury found for Jewelry TV and wrote "$13 million" in the compensatory damages blank on the verdict form.

➢ On the breach of contract claim, the jury found for Jewelry TV. The foreman wrote $13 million" in the "reliance" damages blank but "$0" in the "benefit of the bargain damages" blank and $0 in the "lost profits" blank. The jury wrote $13 million for breach of contract, although damages for breach of contract were limited to $5 million by a provision in the agreement.

The jury's findings show that it intended Jewelry TV to succeed on at least some of its theories.

## II. ELECTION OF REMEDIES

It is not entirely clear whether the jury wanted to award $39 million (awards added together) or $13 million. Instruction 28 told the jury not to increase an award on one claim because

of the jury's answer on another claim. If the jury intended the three damage awards to be added together, there is no explanation for the jury's award of exactly the same sum for three distinct theories. Our role is to assess the District Court's interpretation of this verdict form.

After trial, the District Court directed the parties to brief the issue of election of remedies. This post-trial proceeding converted the jury's findings into a specific number for judgment. The District Court was required to take the jury's findings and distill them into a legally accurate damage award. The jury found which theories had been proven, and the District Court applied the doctrine of election of remedies to pinpoint how much Sterling would have to pay Jewelry TV.

At oral argument in this court, the judges asked the parties about the possibility of ordering a new trial as a method of clarifying the questions left unclear by the jury's verdict form. The plaintiff-appellant stated clearly that it does not want and is not asking for a new trial. The defendant-appellee also does not want a new trial. That leaves us the responsibility to decide whether we should interpret the verdict form by adding the three $13 million figures together or follow the District Court's interpretation that the jury intended only one $13 million finding of damages. In this situation, the fact that the District Court oversaw the preparation of the verdict form and discussed with the jury their questions about its meaning leads us to give great weight to his view of how the verdict form should be interpreted. This reliance on the trial judge is particularly appropriate in Tennessee which has stated the role of the trial judge as "thirteenth juror" as follows:

> The trial judge, charged with ensuring a fair trial, serves as an important check on a jury's discretion to award damages. One way the trial judge does this is by serving as the thirteenth juror. [citation omitted] As thirteenth juror, the trial judge must independently weigh and review the evidence presented at trial to determine whether it preponderates in favor of the verdict and decide whether he or she agrees with and is satisfied with the jury's verdict. [citation omitted] No verdict is valid unless approved by the trial judge acting as the thirteenth juror. [citation omitted]

*Meals ex rel. William Meals v. Ford Motor Company*, 417 S.W.3d 414, 420 (2013).

We have also addressed this exact problem before. *See Hickson Corp. v. Norfolk S. Ry. Co.*, 260 F.3d 559 (6th Cir. 2001) (interpreting Tennessee law). In *Hickson*, we remanded because a verdict form was insufficiently detailed. *Id.* at 567–68. But we cautioned that after the form was fixed, "it is incumbent on the trial judge to ensure that the awards are not duplicative or overlapping." *Id.* at 568. *Hickson* also involved an incident that could arguably have been redressed by different remedies. At the conclusion of that litigation and this one, there was only one injury to redress. *Id.* at 566–67 ("Election of remedies is 'the legal version of the idea that a plaintiff may not have his cake and eat it too.'") (citing D. Dobbs, REMEDIES § 1.5 at 14 (1973)); *see also Shahrdar v. Glob. Hous., Inc.*, 983 S.W.2d 230, 238 (Tenn. Ct. App. 1998) ("Whether the theory of recovery is breach of contract, intentional misrepresentation, or promissory fraud, if the damages claimed under each theory overlap, the Plaintiff is only entitled to one recovery.").

### III. PREJUDGMENT INTEREST RATE

Because this case has been pending so long, the amount of interest awarded on the judgment could be large. The District Court set the prejudgment interest rate in this case at 1.22%, which was exactly the federal postjudgment rate at the time of judgment. The District Court's selection of this interest rate without much explanation strikes us as mechanical. We have held before that similar defects were an abuse of discretion. *See, e.g.*, *Pittington v. Great Smoky Mountain Lumberjack Feud, LLC*, 880 F.3d 791, 807–09 (6th Cir. 2018); *Schumacher v. AK Steel Corp. Retirement Accumulation Pension Plan*, 711 F.3d 675, 685–87 (6th Cir. 2013). The thrust of those cases is that the District Court must thoroughly explain its decision on prejudgment interest.

Under Tennessee law, treating a single factor as dispositive in the interest assessment is suspect. In *Hunter v. Ura*, the Tennessee Supreme Court held that a trial court did not abuse its

discretion on prejudgment interest because, "the trial court gave extensive consideration to this issue and fully analyzed the plaintiff's arguments and evidence. . . . There is no indication that the trial court failed to consider the relevant factors or that the trial court considered any of the factors dispositive." *Hunter v. Ura*, 163 S.W.3d 686, 706 (Tenn. 2005). The exact opposite is true here. The district court's analysis was terse at best, and to the extent that the length of the litigation was a reason for its *initial* decision on prejudgment interest, that factor was dispositive. Tennessee courts will not "rubber stamp" a trial court's decisions on interest, *Poole v. Union Planters Bank, N.A.*, 337 S.W.3d 771, 790 (Tenn. Ct. App. 2010), and many decisions analyze the record to craft an interest award fitting the dispute. *See, e.g.*, *Wooten v. Black*, No. M2009-00963-COA-R3-CV, 2009 WL 4841066, at *3 (Tenn. Ct. App. Dec. 15, 2009) (affirming interest award but analyzing specific facts); *Scholz v. S.B. Int'l, Inc.*, 40 S.W.3d 78, 84 (Tenn. Ct. App. 2000) (vacating and remanding on interest).

The District Court engaged in the same "mechanical application" of the federal rate that we found fatal in *Schumacher*. *See* 711 F.3d at 685. We have also explained that District Courts' discretion is cabined by "the fact that we look with disfavor on simply adopting state law interest rates." *See Rybarczyk v. TRW, Inc.*, 235 F.3d 975, 985 (6th Cir. 2000). Indeed, in "simply adopting" the federal rate of 1.22%, the district court relied on only its discretion—that is the epitome of an impermissible "mechanical application." When a District Court makes a specific calculation assessing interest, that exercise bears on the case before the court. *See, e.g.*, *Lativafter Liquidating Tr. v. Clear Channel Commc'ns, Inc.*, 345 F. App'x 46, 52 (6th Cir. 2009) (affirming District Court's calculations of 4.666%). But that did not happen here. Accordingly, we vacate and remand this issue to the District Court for further proceedings.

## IV. CONCLUSION

In this complex case, the District Court was in the best position to evaluate what the jury did. We **REMAND** this case as to the prejudgment interest issue and **AFFIRM** in all other respects.

**RALPH B. GUY, JR., Circuit Judge, concurring.** For the reasons briefly outlined below, I concur in Judge Merritt's opinion and write separately to explain why I would affirm the district court's decision to enter judgment in favor of plaintiff for $13 million in damages.

If the jury had been polled, there would be no need to speculate about the jury's intentions with respect to the damages it awarded. In my view, whether or not the jury intended to award a total of $39 million in damages, the district court did not err in requiring an election of remedies because "the damages awarded by the jury on Plaintiff's claims for fraudulent inducement, negligent misrepresentation, and breach of contract overlap such that recovering damages on more than one of these claims would result in a duplicative recovery for Plaintiff." Judgment, p.2 (citing *Hickson Corp. v. Norfolk S. Ry. Co.*, 260 F.3d 559, 566 (6th Cir. 2001)). (Page ID # 30765.) This conclusion is consistent with *Concrete Spaces*, which explained, in part, that special verdicts should be used "in cases involving multiple theories of liability and various types of damages" in order "to preserve the jury's findings *and* facilitate the plaintiff's ability to elect damages." *Concrete Spaces, Inc. v. Sender*, 2 S.W.3d 901, 910 (Tenn. 1999) (emphasis added). Because the jury here was instructed to determine the damages on each claim independently and return verdicts awarding damages separately on each claim, it was "incumbent on the trial judge to ensure that the awards are not duplicative or overlapping." *Hickson*, 260 F.3d at 568.

Nor do plaintiff's arguments on appeal persuade me that the district court erred in finding that the damage awards were duplicative of each other. Indeed, although proof of fraudulent inducement and negligent misrepresentation may have rested on different conduct, the damages that arguably resulted covered the same ground. And, plaintiff's appeal outlines the proofs offered in support of its claim to aggregate losses of $56 million in terms of the categories of damages—both "benefit of the bargain" and "out of pocket" damages—without distinguishing between the

damages that flowed from each of the claims. Moreover, when asked to specify the damages resulting from the breach of contract, the jury awarded $13 million in reliance damages but awarded nothing for benefit-of-the-bargain damages or "lost profits." (Page ID # 26353.) For these reasons, I would affirm the required election of remedies and the district court's order that plaintiff recover $13 million in damages on its claim for negligent misrepresentation.

**KAREN NELSON MOORE, Circuit Judge, concurring in part and dissenting in part.**

The fact is that the jury awarded $39 million. Admittedly, it is odd that the jury awarded $13 million on each claim—but the question is what to do about the jury's allocation. We should side with the jury. Importantly, the jury used a special verdict form to enter three separate awards, and its $39-million total falls easily within the $56-million range presented by the Plaintiff's expert at trial. I therefore disagree with the majority's framing and resolution of this issue. Because the majority sees it differently, I respectfully dissent.

As a threshold matter, Jury Instruction 28 can be read only to mean that the jury should decide damages on each claim independently. *See* R. 823 (Jury Instr. at 32) (Page ID #26512) ("Do not increase or reduce the amount in one answer because of your answer to any other question about damages."); *see also* R. 912 (Trial Tr. at 177–78) (Page ID #34977–78) (trial judge referring to Jury Instruction 28 as the one that says "take the questions one at a time."). In the absence of indications to the contrary, we presume that the jury followed this instruction. *See Barnes v. Owens-Corning Fiberglas Corp.*, 201 F.3d 815, 822 (6th Cir. 2000); *see also Mike's Train House, Inc. v. Lionel, L.L.C.* ("*MTH, Inc.*"), 472 F.3d 398, 415 (6th Cir. 2006). Furthermore, the jury used a special verdict form, which asked the jury to find liability separately for each claim and to find damages separately for each claim. R. 815 (Verdict Form); R. 913 (Trial Tr. at 29–31) (Page ID #35044–46). That is exactly what the jury did. *See id.*

The district court also thought that the jury made three independent awards. The district court determined that the jury's three awards "overlap such that recovering damages on more than one of these claims would result in duplicative recovery for Plaintiff." R. 868 (J. Order at 2) (Page ID #30765). Accordingly, the district court made the Plaintiff elect a remedy. *Id.* If there were truly a single $13-million award, then the election of a remedy would not be necessary. That is,

the district court would have simply interpreted the verdict form as a $13-million total award for all three claims—and thus an election of a remedy would be unnecessary because the jury awarded a single $13-million award, not three from which the Plaintiff must chose. The jury's actual award therefore, was $39 million, and then the district court reduced the award to $13 million.

The district court should not have overridden the jury. First, the special verdict form alleviates the concerns underlying double recovery expressed by the Tennessee Supreme Court in *Concrete Spaces*. In that case, the Tennessee Supreme Court explained that a special verdict form, as well as separate jury instructions for each theory of liability, can prevent the risk of double recovery. *See Concrete Spaces, Inc. v. Sender*, 2 S.W.3d 901, 909–10 (Tenn. 1999); *see also Hickson Corp. v. Norfolk S. Ry. Co.*, 260 F.3d 559, 568 (6th Cir. 2001) (remanding for a new trial on only damages because the verdict form "failed to ask the jury what the specific damages were for that claim."). As stated, we presume that the jury followed the instructions and the special verdict form, and thereby awarded separate damages for each theory of liability. At the very least, the district court's essentially nonexistent explanation for its determination that the jury's awards overlapped, *see* R. 868 (J. Order at 2) (Page ID #30765), "leav[es] us guessing whether this exercise of discretion is a permissible one." *See Gibson v. Moskowitz*, 523 F.3d 657, 667 (6th Cir. 2008). Nor did the district court find or explain why the different remedies were "inconsistent and irreconcilable[,]" such that requiring the Plaintiff to elect a remedy was appropriate. *See Concrete Spaces*, 2 S.W.3d at 906; *see also Miller v. United Automax*, 166 S.W.3d 692, 696 (Tenn. 2005) ("[A] plaintiff may be forced to elect between different remedies where the remedies are *so inconsistent or repugnant that pursuit of one necessarily involves negation of the other*.") (internal quotation marks and citation omitted) (emphasis added). In sum, the special verdict form counsels in favor of following the jury, and the district court has left us guessing why it thought differently.

Next, even if the jury erred or was confused by the instructions, any error is harmless. *See* R. 908 (Trial Tr. at 34–36) (Page ID #33923–25) (presenting expert evidence to the jury that damages totaled as much as $56 million). In *Barnes*, despite some errors in the jury instructions, sufficient evidence supported the jury's damages award. 201 F.3d at 827–28. Consequently, we upheld the award as reasonable. *Id.* Here, the jury's $39-million award easily comes under the $56-million ceiling set by the Plaintiff's expert at trial. *Compare Wesley v. Campbell*, 864 F.3d 433, 445 (6th Cir. 2017) (restating the well-established rule that an appellate court "should not disturb a jury verdict unless it is beyond the maximum damages that the jury reasonably could find to be compensatory for a party's loss.") (quoting cases), *and Hudson v. Insteel Indus., Inc.*, 5 F. App'x 378, 387–88 (6th Cir. 2001) (explaining that, despite the possibility of double recovery in the case, "[t]he jury's award . . . did not exceed that which could have reasonably been awarded in the absence of any double recovery."), *with MTH, Inc.*, 472 F.3d at 415 ("Although juries are presumed to follow instructions, it is quite clear that the jury did not do so here. *There is no evidence in the record* that [defendant's] enrichment exceeded [plaintiff's] losses by $12,834,820, nor does [plaintiff] identify the evidence in the record that could support that award.") (emphasis added). In short, sufficient evidence here supports the jury's $39-million award.

Moreover, the debate about whether the Plaintiff's claims seek to redress multiple injuries or just one injury is irrelevant. This debate is an issue for the two tort claims in particular, but there is a factual and a legal response that reveal this is no problem at all. Factually, again, the evidence in the record more than doubled the $26-million jury award on the two tort claims. *See* R. 908 (Trial Tr. at 34–36) (Page ID #33923–25). Legally, "[a]lthough a double recovery may not be had, the jury is not prohibited from allocating a total damages award between different theories of recovery." *See Gibson*, 523 F.3d at 667 (quoting *Johnson v. Howard*, 24 F. App'x 480, 485

(6th Cir. 2001)). In *Johnson*, for example, a correction officer beat an inmate, and the inmate brought assault and battery and excessive force claims against the officer. *See* 24 F. App'x at 484. The jury divided the award equally between the two theories of recovery, and we upheld the jury's allocation. *Id.* at 484–85, *accord Gibson*, 523 F.3d at 667.

*Meals ex rel. Meals* cannot carry the weight the majority places on it. That case addressed the trial judge's role as a "thirteenth juror" in the context of remittitur (which cures excessive awards), not double recovery or election of remedies (which cures overlapping awards). *See Meals ex rel. Meals v. Ford Motor Co.*, 417 S.W.3d 414, 420–21 (Tenn. 2013). Notably, the trial judge in *Meals* deferred to the jury's award, *id.* at 422, and the Tennessee Supreme Court held that the "verdict was supported by material evidence and is within the range of reasonableness." *Id.* at 428. The district court here, however, provided no analysis of the evidence.

Lastly, the Plaintiff concedes that it cannot recover more than $5,521,025 on its contract claim because of a contractual damages cap. Appellant's Br. at 42. (The jury was not instructed on this point.) For these reasons, I would reverse the district court and reinstate the jury's $39-million award, less the amount in excess of the contractual damages cap.

\*\*\*

I agree with the majority's holding on prejudgment interest and that we should remand that issue to the district court.